## Case No. 14,164.

TRECOTHICK v. AUSTIN et al.

[4 Mason, 16.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1825.

LIMITATION OF ACTIONS — AGAINST EXECUTORS — ASSETS—FOREIGN EXECUTOR— ACTION—PARTIES.

1. The statute of limitations, of actions against executors and administrators in Massachusetts,

[1] [Reported by William P. Mason, Esq.]

does not begin to run against persons who have a right to appeal from the decree granting administration, until their right of appeal is lost, or the decree becomes absolute.

[Cited in Robbins v. Coffing. 52 Conn. 131; Harlow v. Dehon, 111 Mass. 199.]

2. Trusts devolving on an executor, and trust property in the hands of the deceased, kept separate, are not assets in the hands of executors and administrators; and the statute of limitations does not run against them.

[Cited in Taylor v. Benham. 5 How. (46 U. S.) 276; Re Eldridge, Case No. 4,301; Illinois Trust & Sav. Bank v. First Nat. Bank, 15 Fed. 859.]

[Cited in First Nat. Bank v. Hammel (Colo. Sup.) 23 Pac. 988; Union Nat. Bank v. Goetz (Ill. Sup.) 27 N. E. 909. Cited in brief, Kirby v. Wilson, 98 Ill. 242. Cited in Fowler v. True, 76 Me. 46; Re Shaw, 81 Me. 226, 16 Atl. 662; Johnson v. Ames, 11 Pick. 180, 182; Andrews v. Bank of Cape Ann, 3 Allen, 314; White v. Chapin, 134 Mass. 231; Attorney General v. Brigham, 142 Mass. 251, 7 N. E. 852; Little v. Chadwick, 151 Mass. 111, 23 N. E. 1005. Cited in brief, Babb v. Ellis, 76 Mo. 462. Cited in Luce v. Manchester & L. R. R.. 63 N. H. 590, 3 Atl. 618; Ferris v. Van Vechten, 73 N. Y. 121; Boone v. Citizens' Sav. Bank, 84 N. Y. 87. Cited in brief, Randall v. Peckham, 10 R. I. 545.]

3. The assignor of a chose in action is not, in equity, a necessary party, where the suit is by the assignee and the assignment is absolute.

[Cited in Henry v. Francestown Soapstone Stove Co.. Case No. 6,382; Land Co. v. Elkins, 20 Fed. 546; Hickox v. Elliott, 22 Fed. 21.]

[Cited in Mackay v. St. Mary's Church, 15 R. I. 125. 23 Atl. 108; Vance v. Evans, 11 W. Va. 382.]

4. Although no suit can be maintained in our courts by a foreign executor and administrator, unless he has taken out administration here; yet this principle does not apply, except where the party sues in right of the deceased.

[Cited in Taylor v. Benahm, 5 How. (46 U. S.) 271; Wilkins v. Ellett, 9 Wall. (76 U. S.) 741, 743.]

[Cited in Davis v. Smith, 5 Ga. 274. Cited in brief in Martin v. Gage (Mass.) 17 N. E. 311. Cited in Reynolds v. M'Mullen, 55 Mich. 575, 22 N. W. 45. Cited in brief, Wilburn v. Hull. 16 Mo. 429; Morton v. Hatch, 54 Mo. 409; Taylor v. Barron, 35 N. H. 496. Cited in Vroom v. Van Horne, 10 Paige, 557; Pedan v. Robb, 8 Ohio, 227.]

5. If he sues in his own right, although the right be derived under a foreign will, no administration need be taken out here, if it does not affect real estate passed by the will here.

[Cited in Humphreys v. Hopkins (Cal.) 22 Pac. 895. Cited in brief in Jaynes v. Goepper (Mass.) 17 N. E. 835; Olney v. Angell, 5 R. I. 200, 202.]

6. A derivative title to personalty may be proved under a foreign will without probate here.

[Cited in Olney v. Angell, 5 R. I. 204.]

Bill in equity [by James Trecothick against Jonathan L. Austin and others], to which the defendant, Jonathan L. Austin, put in distinct demurrers to different parts of the bill. To understand the points made at the bar, it is necessary to state some of the leading facts of the bill. Barlow Trecothick of London, by his will in 1774, after devising certain annuities and legacies and ordering the payment of his debts, gave the residue of all his real

estates to Lord Frederick Campbell, Frederick Vane, the Rev. Earl Apthorp, and Lawrence Holken, in trust for any children he might leave by his wife, &c. (and he left none), and "in default of such issue in trust for his nephew (the plaintiff) and the heirs of his body begotten." He gave the residue of his personal estate to the same gentlemen "to lay out and invest the same in real estates in England, upon the same trusts as were therein declared concerning the real estate;" and he appointed the trustees his executors. After his death, which was in 1775, his will was duly proved by the executors before the prerogative court of the archbishop of Canterbury. Large sums of money were due to the testator, by bonds, mortgages, &c. in the then British provinces, now United States of America. For the purpose of collecting these debts the executors and trustees appointed one James Ivers, of Boston, (the father of the plaintiff,) their agent, who undertook the trust, and the bill alleges, that he collected large sums of money under the agency. The bill farther states, that Barlow Trecothick and one John Tomlinson were partners in trade, and that Trecothick was the survivor. Large sums of money were due in the British provinces, by mortgage and otherwise, to the firm, at the death of Trecothick. Afterwards an agreement was entered into between the plaintiff and the trustees under the will, with the executor and heir at law of Tomlinson, by which the whole of the debts and securities for the money, so due to the firm, were assigned to the plaintiff for his own use. For the purpose of collecting these debts, &c. a letter of attorney (to which all proper persons were parties) was, in 1784, given to one Mark H. Wentworth and the said James Ivers, jointly and severally, to take possession of the mortgaged estates, and to collect the debts, &c. under which Ivers acted, collected debts, and took possession of the mortgaged estates, &c. Afterwards, in 1798, the Rev. Earl Apthorp, then being the only surviving executor and trustee of Barlow Trecothick, gave a joint and several letter of attorney to the said James Ivers, and the defendant Jonathan L. Austin, authorizing them to collect all debts, &c. due in America to Barlow Trecothick or to the firm of Trecothick & Tomlinson, and to take possession of all mortgaged estates, &c. and to sell and convey the same, &c. Afterwards, in 1800, one Edward B. Long and wife, who was sole heir of John Tomlinson, Jun. (the sole heir of John Tomlinson, Sen.) gave a letter of attorney (at the request of the plaintiff), to Ivers & Austin, to collect all the debts due to the firm of Trecothick & Tomlinson, &c. The bill further states, that all the executors of Barlow Trecothick are now dead; and that all his debts and all the legacies and annuities, given by his will, have been duly paid; that it was agreed, between the plaintiff and Ivers, that Ivers should, during his natural life, continue to possess and enjoy all the interest of all the monies, property, and

effects of the testator, B. Trecothick, that belonged to the plaintiff, that he could collect and get in, &c.; and that his executors should account to the plaintiff for the principal after his decease. The bill farther charges, that Ivers, in his life time, under his agencies as above mentioned, collected large sums of money, took possession of mortgaged estates, and sold and disposed of the same, and held the proceeds in trust for the plaintiff; that he kept memorandums and books of accounts and papers respecting the same, and the execution of his agencies, of which a discovery is prayed; that Ivers is dead, and that the defendant (Jonathan L. Austin) is the surviving executor under his will; that the memorandums, books of accounts, and papers of Ivers, came into the possession of the executors of Ivers; that the executors received large sums of money belonging to the trust property of the plaintiff in virtue of their executorship; that the defendant (J. L. Austin) also has received property under his agency; that Ivers, in his life time, invested some of the proceeds of the money so received, in real estate, of which the bill seeks a discovery; and that Ivers and Austin sold certain specific estates; that at his death Ivers held a valuable real estate and securities in the public stock in trust for the plaintiff as aforesaid, of which his executors have become possessed, and have converted the same to their own use. The bill farther states, that the defendants set up various defences: 1. The statute of limitations of Massachusetts limiting suits against executors and administrators to four years. As to this, it states, that Ivers's will was proved, and administration taken in 1813; that the plaintiff, residing out of the country at the time of the probate, was entitled to appeal from the probate thereof by the law of Massachusetts, that he did appeal in 1815, that the will was not conclusively established as to him, until the affirmance thereof by the supreme court in 1816, and that the present suit was brought within four years from the affirmance: 2. That a probate of the will and administration is necessary to be taken in the state of Massachusetts on the estate of Barlow Trecothick and John Tomlinson, before the present suit can be maintained. The bill charges the contrary of this as being the law, asserting that the probate before the prerogative court is sufficient, and no administration here necessary on either estate, to enable the plaintiff to maintain his suit. The cause was set down for argument upon the demurrer.

Gorham and Blake, in support of the demurrer, advanced the following points: 1. That all the demands set forth in the bill, were, virtually, demands against the estate of J. Ivers, and therefore were barred by the statute of limitations of 1791. 2. That the complainant had shown no right, by his bill, to appear as a party in this court to call the defendant to account, as being the devisee or residuary legatee, under the will of B. Tre-

cothick. There was no probate of any such will in this country. 3. That the complainant could not claim any interest, legal or equitable, through the medium of B. Trecothick's will, as devisee, or otherwise, without joining, in his bill, the legal representatives of B. Trecothick. 4. That it did not appear by the bill, that the Tomlinsons, either the elder or younger, ever made wills, or, if they did, that there ever was probate thereof in England or America, which ought to appear by the bill.

Hubbard and Prescott, for plaintiff, in answer to the first ground, in support of the demurrer, taken by the defendant's counsel, contended: 1. That the statute of limitations ought not to, and did not bar the plaintiff in this case, because the plaintiff was out of the country, and had not any attorney in the country at the time when the statute began to operate, and that, within one month after he had an attorney in the country, he prosecuted his appeal, and instituted his suit within four years after its decision, and that the statute did not run against him during the appeal. 2. That the plaintiff was now claiming property belonging to himself, that was held in trust by Ivers, and that such claim was not within the statute; that the statute applied only to creditors of the estate of the deceased, and was made to protect executors.

As to the second ground of demurrer, they contended, that the will of B. Trecothick, having been duly proved by the executors in ·the prerogative court of the archbishop of Canterbury, before the separation of the then colonies from the mother country, the subsequent separation of the colonies did not make it necessary that it should be proved again in this country; that if it was necessary to file a will and take out letters of administration in this state, in cases arising before the separation of the two countries, as is now required since the separation, still, that this necessity only applied to cases where the plaintiff sued in his representative capacity, but that, in this case, the plaintiff prosecuted in his own name and behalf, and not as representative of B. Trecothick; that the defendant ought to be considered as estopped from denying the probate of the will and power of the ·executors, under which his testator acted.

As to the third ground of demurrer, they contended, that it being stated in the bill, that all the debts, legacies, and annuities had been paid, which, by the demurrer, is taken to be true, the plaintiff was, in consequence, entitled to the whole residue; that there was, therefore, no other person interested, nor was any person within the jurisdiction who could be made a party; that after the lapse of half a century, and the death of all the trustees, the court would not require new ones.

As to the fourth ground of demurrer, they contended, that neither the executor nor heir of Tomlinson being made parties to the bill, no profert of the will was necessary; that the plaintiff did not claim as executor or representative of Tomlinson, but as a purchaser from the representative, and under such circumstances it was not necessary for him to make a profert of the will; it would be sufficient if he produced it at the hearing to maintain his title.

STORY, Circuit Justice. This is a bill in equity, and it has come before the court upon distinct demurrers put into different parts of the bill, upon the most material causes of which it may be necessary for the court to express an opinion. Upon this posture of the case, the facts stated in the bill, so far as they are covered by the demurrers, are to be taken to be true. If the demurrers to the extent of their reach cannot be sustained, they must be overruled. The rule in equity is, that a demurrer cannot be good in part and bad in part; though it may be good as to one party and not as to another. If, therefore, it covers too much ground, it will be overruled as to the whole; and the court will not separate the sound from the unsound parts, but leave the party to state his general rights of defence in his answer. Cooper, Ch. Prac. 113; Mayor, etc., of London v. Levy, 8 Ves. 398.

The first point presented by the demurrer is, that upon the case made by the bill, all remedy against the defendant (Jonathan L. Austin), as executor of James Ivers, is barred by the Massachusetts statute of limitations. The act of 1788 (chapter 66), in the third section, provided, that "no executor or administrator that shall hereafter undertake that trust, shall be compelled or held to answer to the suit of any creditor of his testator or intestate, unless the same suit shall be commenced within the term of three years next following his giving bond for the faithful discharge of his trust, &c. provided such executor or administrator shall give public notice of his appointment to that office, in the manner this act directs." There is a further proviso, in the fifth section of the act, that it shall not extend to any action "for the recovery of a legacy, bequest, gift, or annuity, arising, accruing, or becoming due, by virtue of any last will and testament." The third section of this act was repealed by the act of 1791 (chapter 28), and in lieu thereof it was provided, that "no executor or administrator, who has been appointed since the passing of the foregoing act (Act 1788, c. 66), or who shall hereafter be appointed, shall be held to answer to any suit, that shall be commenced against him in that capacity, unless the same shall be commenced within the term of four years from the time of his accepting that trust, provided he give notice of the appointment in the manner prescribed in the act before recited" (Id.). It is observable that in this clause the restrictive words of the former act, limiting its operation to creditors, are dropped, the words in that act be-

ing "to answer to the suit of any creditor," and in the present act, "to answer to any suit." Yet the sole reason, assigned in the preamble for the repeal of the act, is, that "from the shortness of said limited term [three years], and from the want of a general knowledge thereof, many inconveniences may accrue to the citizens of this commonwealth." So that no inference can be drawn from the omission in the act, that there was any change of legislative intention, or that the act ought to be construed to apply to all suits whatsoever. I am not aware that the courts of this state have ever held the construction of the two statutes to be different; but so far as cases have occurred, they seem to have received the same construction, viz. that there is nothing more than a substitution of four years' limitation for the former limitation of three years. See Scott v. Hancock, 13 Mass. 162; Brown v. Anderson, 13 Mass. 201; Ex parte Allen, 15 Mass. 58; Emerson v. Thompson, 16 Mass. 429. It is also observable, that in the statute of 1791, there is no exception in favor of legatees and annuitants; yet it has never been supposed that they were barred after the lapse of the four years, by the act of 1791. But it is more material to observe, that there is in neither statute any exception of suits by heirs and distributees. They could not reasonably be deemed "creditors" within the purview of the act of 1788; and there is not the slightest reason to suppose, that the legislature intended, by the act of 1791, to bar their rights after four years. The object of both acts was to produce a speedy settlement of estates, and a distribution of the residue after the payment of debts and charges among the heirs. Creditors are allowed four years to bring in their claims; and until their claims are satisfied the heirs can have no fixed title. To bring them within the general words of the act, would therefore be to exclude them from the means of asserting their rights, until the moment they were barred. Such a construction has never yet been asserted. See Decouche v. Savetier, 3 Johns. Ch. 190. There are then some cases to which the words of the act do not apply; and it cannot be contended with success, that the words "any suit," are unlimited in their operation. There are manifestly other cases, which fall within the same principle. The executor is, in a strict sense, a trustee of the residue for the heirs; and by the terms of the will he may, as executor, be constituted a trustee for other purposes. He may, as executor, be directed to retain a distributive share, until an infant arrives at 21 years of age; he may be directed to hold certain property in his hands during the life of a feme covert, paying her the income. Many other cases may be easily put, of directions to him as executor, which operate by way of trust, and must, from their nature and objects, be excluded from the statute, although if the words were to be construed

very largely, the suits brought to enforce them, might be properly deemed suits against him as executor.

There is another view of the statute of limitations very material to the present cause. I pass over the considerations, whether the executor can ever avail himself of the statute in bar to a bill in equity, without pleading it, and whether any court ought, of its own mere authority, to hold it a good bar, when the executor has not elected to put it in the shape of a bar, but it comes out incidentally on the other side in the allegations of the bill. These considerations deserve a very deliberate examination; but I pass them over, because there is a flat exception in the very substance of the statute, which goes to the overthrow of the limitation itself. It is the proviso, that it shall not be a bar unless the executor has given notice of his appointment in the manner prescribed by the law. It has been adjudged, that the omission is fatal, not only as against the administrator, but the heir and devisee. Bachelder v. Fiske, 17 Mass. 464; Emerson v. Thompson, 16 Mass. 429. Now the bill contains no allegation, that the executors of Ivers ever gave due notice of their appointment; and certainly the court cannot presume it. It cannot, by inference and argument, create a positive bar, where all the facts, constituting that bar, are not before it. If therefore the other considerations, already alluded to, were of no weight, there would be intrinsic difficulty in arriving at the conclusion upon the facts in the bill, that a strict and absolute bar was presented to the court. It is proper, however, as this matter may not go to the merits, and be a mere slip in the pleadings, to give the subject a more comprehensive discussion.

The argument of the plaintiff, drawn from the matter of the bill, is, that the statute of limitation does not apply to him, because, though the will of Ivers was proved in 1813, yet that probate was not, at that time, conclusive on him; and until it was conclusive, the bar did not begin to run against him. It is well known, that in this state the courts of probate have an exclusive and peculiar jurisdiction as to the probate of wills; and a probate once made therein is, in general, conclusive upon all parties, as well as to the real, as personal, estate bequeathed by the will. The statute of 1783 (chapter 46), which is incorporated into our present probate act of 1817 (chapter 190), after giving this jurisdiction, directs, "that any person aggrieved at any order, sentence, decree, or denial of any judge of probate, &c. may appeal to the supreme court of probate," within one month from the time of making such order, sentence, decree, or denial, in a manner prescribed by the act. Then comes this further proviso, "that any person beyond sea, or out of the United States, who shall have no sufficient attorney within this government, at the time of such order, sentence, decree, or

denial, shall have one month after his or her return or constitution of such attorney, to claim and prosecute their appeal as aforesaid." The plaintiff was precisely in the predicament stated in this proviso. He was beyond seas, and without a sufficient attorney, at the time of the probate of Ivers' will in 1813. He subsequently, in 1815, appealed from the decree approving that will, and granting administration to the executors; and upon that appeal, the supreme court of probate affirmed the decree. and thereby confirmed the former proceedings.

I do not think it necessary to give any opinion upon the point, suggested at the argument, whether, in case of an appeal from the decree of a court of probate, the sentence becomes a nullity, unless confirmed by some act of the court above. An appeal in ordinary cases in ecclesiastical courts is not supposed to have such effect, but merely to suspend the operation of the decree, until the superior court has acted upon it, or has pronounced the appeal deserted. See Toll. Ex'rs, bk. 1, c. 2, §§ 9, 10. And the fifth section of chapter 46 of the act of 1783 seems to point in the same direction. But it is unnecessary to discuss this point; because, be this as it may, until the appeal is actually made and perfected, the decree is in full force and vigour, and every act done under it is rightfully done. But when the appeal is made, it certainly, by the express terms of the fifth section, suspends any further proceedings under the decree, until a final determination of the appellate court. In the ordinary case of decrees, where all parties live within the state, a month is allowed, within which an appeal may be made. The executor or administrator may still go on, until it is made, and if not made until the last day of the month, his intermediate acts must have validity. But, surely, it cannot be maintained, that if the appeal were duly made within the month, the mere fact, that the decree had been in operation for ten or twenty days, would make the statute of limitations run, and that notwithstanding the appeal might not be determined, until after four years, it would continue to run and conclude all parties. Such a construction would be so inconvenient and unjust, that no court would resort to it, unless it were unavoidable. A creditor cannot sue an executor or administrator, when his appointment is in suspense; nor can the latter meddle with the assets, so as to discharge the debts. What then would be the consequence of such a doctrine? That the rights of all parties might, if one may use the expression, be in a state of suspended animation, and yet a bar be all the while running, which they could not avert. It appears to me, that the proper exposition of the statute is, that the bar, let in by the probate of the will and administration granted thereon, is suspended by the appeal; and it revives again, only when the administration is again put in motion by the

determination of the appellate court. Suppose an executor or administrator should, after his appointment, die within a year, and no administration should be taken, or it should be in litigation, until after the lapse of four years, are all creditors to be barred, because the statute began to run in the time of the first administrator? If not, what is the difference between the case of an administration suspended by an appeal and suspended by death? In respect to the common statute of limitations, some equitable exceptions have been admitted; and where the statute has once begun to run, it has sometimes been intercepted by suspensions arising from the acts of Providence. The cases of Kinsey v. Heyward, 1 Ld. Raym. 432, and Wilcocks v. Huggins, 2 Strange, 907, may serve as examples. See, also, Willes, 257, note a. In the latter case, the court suggested that the time of one year, usually allowed to an executor to commence a new action, in lieu of one which was gone by the death of his testator, might be properly enlarged, where the executor had been retarded by suits contesting the will or administration.

It strikes me, that in the ordinary case of creditors, the limitation ought not to be held to run, except during the period in which there is a living, unsuspended administration, and of course a right to sue a party competent to be sued. But the doctrine of relation may be relied on. It may be suggested, that such ought to be the effect of an appeal, if the decree be overturned; but if affirmed, then the administration ought to be deemed always in operation from the beginning. The doctrine of relation ought not, in my judgment, to be applied in cases of this nature, so as to work a wrong. It is generally applied in support of rights. And the same evils will exist in relation to creditors, whether the decree be affirmed or reversed. In both cases, during the contestation, the administration is, by the provisions of the statute, stayed and suspended. But, if there were any doubts on this point, as to creditors generally, the case of the plaintiff is certainly entitled to be excepted. He was out of the country, and the probate of the will and the consequent administration had no manner of operation to bind him. The statute secured to him a right of appeal, and as to him, there was not a rightful probate or administration, until the affirming decree of the appellate court. While he was contesting the validity of the administration itself, under the statute, it surely cannot be said, that there was a rightful administrator, whom he might sue, and in whose favour the statute was running. That would be to hold, that the administration was suspended, and yet in activity, at the same time, in relation to the same persons. The statute ought not to be so construed as to involve absurdities. To be rational, it must be expounded in regard to non-residents, entitled to contest the will, to have no operation whatsoever,

until they can no longer contest it. Cases may easily be put, in which very serious inconveniences might otherwise arise. Suppose the case of two wills, disposing very differently of the whole estate, and different executors. If the first is admitted to probate, and afterwards the second is offered by a non-resident, who is, at the same time, a creditor and an executor of the second will, are we to understand, that the probate of the first will makes the statute run against the rights of the party under the second; so that, if the controversy lasts more than four years, the party loses all his rights as creditor? That cannot be pretended, if the second will is finally established: and if the first one is finally established, still, until that decree comes, every right of administration must be in suspense as to all persons whatsoever.

A case has been put at the argument (which indeed is said to be the very case at bar, but with that suggestion I meddle not), which illustrates the propriety of this doctrine. Suppose the testator, by his will, gives an estate to his non-resident son, upon condition that he releases all the debts due him from the testator, and the son appeals from the probate; shall he lose all his rights as creditor by a contestation of the will, if the litigation reaches beyond four years after the administration is first granted?

My judgment is, that, as to the plaintiff, the statute did not begin to run until after the affirmance of the decree in the appellate court; and that, as the present suit was brought within four years from that period, there is no bar growing out of the statute, which can prevent him from maintaining it.

There is yet a very important consideration connected with this subject, which ought not to be omitted. It is, that the statute of limitations never was intended to apply to any cases of trusts, or trust property in the hands of executors and administrators; but simply to property belonging to them, as assets of the testator. The law on this subject does not appear to me involved in any real difficulty. Executors are charged with no more in virtue of their office, than the administration of the assets of the testator. If, at the time of his death, there is any specific personal property in his hands, belonging to others, which he holds in trust, or otherwise, and it can be clearly traced and distinguished from the testator's own, such property, whether it be goods, securities, stock, or other things, is not assets to be applied in payment of his debts, or to be distributed among his heirs; but is to be held by the executors as the testator himself held it. But if the testator has money, or other property, in his hands, belonging to others, whether in trust or otherwise, and it has no earmark, and is not distinguishable from the mass of his own property, the party must come in as a general creditor; and it falls within the description of assets of the testator. This is

the settled law in bankruptcy and in the administration of estates. See Dexter v. Stewart, 7 Johns. Ch. 52; Kip v. Bank of New York, 10 Johns. 63; Moses v. Murgatroyd, 1 Johns. Ch. 119; Decouche v. Savetier, 3 Johns. Ch. 190; Deering v. Torrington, 1 Salk. 79. Stock therefore, expressly held in trust for others by the testator, is not part of his assets to be administered by the executor, but coming into his hands, as the general representative of the personalty, he is by law clothed with the same character of trustee of the property, and succeeds to its obligation. If he holds it after four years from the grant of the administration, he is still responsible to the cestui que trust, as a trust superinduced upon his character as executor, and in virtue of his successorship. The cestui que trust is not, in such case, strictly and merely a creditor of the testator; and the statute bars only claims of a pecuniary nature against the testator, not such as become personal trusts in the hands of the executor. If an executor were, after the death of a testator, knowingly to convert stock held by the testator in trust, could he protect himself from a personal liability for such unlawful conversion, at the suit of the cestui que trust? The testator would have done no wrong, and, strictly speaking, no right of action would have accrued against him, whatever might be the responsibility devolved upon his estate. The distinction already alluded to in respect to money, held in trust by the testator, clears this subject of many of the difficulties which have been suggested at the bar. It is said, that the claim for such money constitutes a legal demand against the estate; and the cestui que trust is, as to it, just like any common creditor. This is true, if the money is mingled, without any distinction, in the mass of the testator's property, and even, if it remains in specie, separated from it, and held as the separate property of the cestui que trust, he may have a right to come in and claim as a general creditor; but whether he is bound to do so, may be a different question. In the former case, without doubt the statute of limitations will run against him; and a court of equity will, in such case, follow the rule of law. The general principle indeed is, that where there is a concurrent remedy at law and in equity, in whichever jurisdiction the suit is brought, the same bar may, if no other equity intervenes, be pleaded. The case of Heath v. Henly, 1 Ch. Cas. 20, seems to the contrary; but it is of doubtful authority, and I agree with Chief Justice Spencer (Murray v. Coster, 20 Johns. 576) in thinking it at war with the doctrine of Lord Hardwicke in Sturt v. Mellish, 2 Atk. 610. The true rule is laid down in Murray v. Coster, 20 Johns. 576. But, take the case, that the money has been invested in personal securities by the testator in trust, and kept separate from his general estate, and

these securities come into the hands of the executor, with the express trust on their face, are they not, to all intents and purposes, in the eye of a court of equity, the property of the cestui que trust? May he not maintain a suit in equity for specific delivery of them to him? Has he not a right to a discovery from the executor, whether the money has been so invested, and in what manner, and to what extent? If mortgages have been taken, has he not a right to a discovery of the fact? And, if there has been no breach of trust by the testator, but he has held the property by an express agreement with the cestui que trust, does the trust cease to have existence, and change its nature by his death? It appears to me, that the principles, by which trusts are excepted from the operation of the ordinary statutes of limitations, apply with full force to cases of this nature. See Decouche v. Savetier, 3 Johns. Ch. 190, 216, 222; Beckford v. Wade, 17 Ves. 87; 2 Madd. Ch. Prac. 244, 245. If the trust is still subsisting in the hands of the executor, as executor, the lapse of four years does not bar a remedy against him. If it has become a mere money transaction, although originating in a trust, then it assumes the character of a debt, and the cestui que trust is a creditor barred by the lapse of the four years. See Vernon v. Vawdry, 2 Atk. 119.

Now, in this view of the case, it is very difficult to support the demurrer. The bill, if I do not greatly misunderstand its purport, does substantially, though certainly not in so exact and pointed a manner as it ought, assert, that Ivers did keep the trust property separate and distinct from his own, and did invest some of it in real estate and securities, &c. and did keep accounts and memorandums of it; and that the trust property has come to the possession of his executors. Now, if this statement be true, and upon the demurrer it must be taken to be true, the plainest case is made out for a bill of discovery against them. It is the common case of trust property, asserted to be in their hands for the benefit of the cestui que trust, of which he claims a discovery and delivery to his use.

Upon the whole, my opinion is, that so far as the demurrer to the bill is founded upon the statute of limitations in favour of executors, it cannot be supported. The defendant (J. L. Austin), as executor of Ivers, cannot shelter himself from answering by the interposition of that statute, as to the asserted trust derived, either under the executors of Trecothick, or the assignment of the Tomlinsons' executor and heir. Lapse of time is sometimes applied in equity in bar of relief upon trusts; but that doctrine stands upon principles entirely distinct from those which regulate positive statute bars. Cholmondeley v. Clinton, 2 Jac. & W. 138; Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 152, 177, note.

The next objection, taken by the demurrer, applies to the defendant (J. L. Austin), as well in his individual, as his representative character. It is, that Trecothick's will has never been proved, or administration granted thereon by any of the probate courts of Massachusetts; which is asserted to be indispensable to maintain a suit in our courts for any assets belonging to his estate. The same objection is made as to the Tomlinsons.

The general position stated at the bar, that no executor or administrator, appointed under a foreign government, can, in virtue of such appointment, sue in our courts, is admitted. The cases cited at the bar are conclusive on this point. [U. S. v. Simms] 1 Cranch [5 U. S.] 258; [Fenwick v. Sears] 1 Cranch [5 U. S.] 282; [Hallet v. Jenks] 3 Cranch [7 U. S.] 219; [Doe v. M'Farland] 9 Cranch [13 U. S.] 151; 3 Mass. 314; 11 Mass. 257, 313; 9 Mass. 337; 1 Pick. 82; Toll. Ex'rs, bk. 1, c. 2, § 8, pp. 71, 72. If, therefore, this were a suit brought by the executors of Trecothick, as executors, to recover any assets of their testator in the hands of the defendant, the objection would be fatal, unless the probate and administration, in the prerogative court of Canterbury, were conclusive upon the colonies antecedently to the Revolution, and ought now to supersede our local regulations under the circumstances of the present case. What the practice was before the Revolution, it is not very easy now to trace. Without doubt, full faith and credit were given in the colonies to all administrations under the authority of the prerogative court of Canterbury. Voluntary payments of debts, and receipts under such administrations, were of unquestionable validity, and released the debtors from farther claim. But this might well be, without supposing that such administrations entitled the parties to maintain suits in our courts. Such payments, voluntarily made to a foreign administrator, would now be held effectual in our courts, upon principles of national amity. This doctrine is supported by Atkins v. Smith, 2 Atk. 63, and still more fully and forcibly illustrated by the very able opinion of Mr. Chancellor Kent in Doolittle v. Lewis, 7 Johns. Ch. 45. But, though in practice it is not improbable, that many suits were brought by English administrators in our courts, there is reason to doubt, whether, if the point had been judicially contested, their right would have been supported. Lord Hardwicke, in Atkins v. Smith, 2 Atk. 63, said, that an administration taken out in England would not extend to the colonies in America. Burn v. Cole, Amb. 415, is to the same effect. The cases there cited prove, that the practice was to take administrations in the colonies, founded on those in England; and the doctrine established in that decision was, not that such administrations were unnecessary, but that they ought to be granted to the English administrator, and that the judge of probate

in the colonies was bound by the probate and administration in England. Even in relation to Ireland and Scotland, the same rule has been applied. A new administration must be taken out there, in order to found a general authority to sue. Toll. Ex'rs, bk. 1, c. 2, § 8, pp. 71, 72. These considerations induce me to doubt, whether before the Revolution, in strict law, an English administration was of force in the colonies to the extent of authorizing suits in our courts in invitum. But assuming, for the sake of the argument, that it was so, it appears to me, that a suit in our courts, at the present time, must be commenced and prosecuted according to the regulations now in force. Now, at least since the statute of 1785 (chapter 12), which provides for the probate of foreign wills, and the granting administrations thereon, the general rule, at present definitively recognised and settled in our state courts, must have prevailed, and at all events ought to prevail in all suits in courts sitting within the jurisdiction. But it is by no means clear, that, if Trecothick's executors were now suing, they would be obliged, in the present case, to take out administration here before they could proceed. The demand against Ivers, or the defendant (J. L. Austin), is not a demand which accrued in Trecothick's life time, or out of any contract with him. But it is a demand which accrued under agencies created by them, in their character as executors, after the death of Trecothick. They might, under such circumstances, have maintained a suit, in their own names, for an account against their agent, and need not have sued in their representative capacity. See Cockerill v. Kynaston, 4 Term R. 280; Cowell v. Watts, 6 East, 405; Thompson v. Stent, 1 Taunt. 322; Toll. Ex'rs, bk. 3, c. 10, p. 439. The agent would be estopped to deny their right to receive, what he had collected in virtue of their authority. See Nickolson v. Knowles, 5 Madd. 47; 10 Vin. Abr. "Estoppel," M; 2 Comp. 11. The true answer, however, to be given to this objection, so far as it applies to the plaintiff, is, that he does not sue in any representative character whatsoever. The right, he claims, is a personal and private right, belonging to himself, and in no sense to another. He may not be able to establish such a right; he may not be able to trace a sufficient title to sustain him, but he claims nothing as the representative of Trecothick; he claims simply as a cestui que trust under his will, and as an assignee under that of the representatives of the Tomlinsons. It is certainly not necessary to prove a foreign will in our courts, where such will constitutes but one step in the title of a party. If Trecothick had bequeathed a coach, or other specific chattel, to the plaintiff, and the executor had assented to the bequest, and afterwards it became necessary to sue for the same, or to establish the right to the same in our courts, I do not understand, that a probate and administration

here would be necessary to establish the title. If a bill were brought in this court, for the specific performance of a contract for the purchase of land, lying in another state, and sold by the devisee thereof, under a will there made and proved, I do not understand, that a probate of the will is necessary, before he can maintain such a suit. Whenever the title to a thing passes by the lex loci, that title may be, nay, must be, made out by such law; and that is all that is necessary. The reason, why an administrator cannot sue in his own name for property here, is, that the administration is local, and confers such right only as to property within the jurisdiction. It is a limited right of representation of the deceased. But, suppose a foreign administrator sells goods of the deceased in the foreign country, and they are brought here, and the right to them is here contested in a suit, may not the party assert his title to them under the foreign will and administration, without a probate here? A will, bequeathing personal estate, conveys that property, wherever it may be situated, if the will is made according to the law of the place of the testator's domicil. Desesbats v. Berquier, 1 Bin. 336; Sill v. Worswick, 1 H. Bl. 690; Bruce v. Bruce, 2 Bos. & P. 231; Somerville v. Somerville, 5 Ves. 750; Potter v. Brown, 5 East, 124; Holmes v. Remsen, 4 Johns. Ch. 460. And it has never been supposed, that it was indispensable to the assertion of a title, derived under such will, that there should be a probate in every place where such property was situate. It is only necessary where a party sues for it, not in his own right, but as the personal representative of the deceased. In respect to a cestui que trust, it is very true, that he cannot sue at law in his own name to get at the trust property; but he must institute his proceedings in the name of the trustee. But in equity it is otherwise. He may there directly enforce his rights, not only against his trustee, but against all others having the trust fund in their hands. Equity will not put the cestui que trust to a circuity of action, but will make the party responsible directly and immediately to him, who is ultimately entitled to the fund. If money, or other personal property, be in the hands of a party, payable to a trustee for the use of a third person, equity will enforce a payment directly to the latter. A cestui que trust, absolutely entitled to a fund, has a right to control and regulate it, and dispose of it, at his pleasure. Riddle v. Mandeville, 5 Cranch [9 U. S.] 322; Russell v. Clarke's Ex'rs, 7 Cranch [11 U. S.] 69, 97; Doran v. Simpson, 4 Ves. 651; Short v. Wood, 1 P. Wms. 470; Collet v. Collet, 1 Atk. 11.

The principles, thus far discussed in respect to Trecothick's estate, apply with more pointedness to that part of the case connected with the Tomlinsons. Tomlinson (the younger) was partner of Trecothick, and the latter, as survivor, was entitled to collect

all the effects of the firm, in trust, however, as to Tomlinson's moiety, for his representatives. Those representatives assigned their right to the plaintiff for his own use, and the executors assenting to it, a letter of attorney was made, authorizing Ivers and the defendant (J. L. Austin), to collect the partnership effects for the benefit of the plaintiff. This is the case made by the bill, and it is of course the case of an assignee, claiming from the agent, with a knowledge of the trust, a right to the property collected under the agency, which he asserts to be still held in trust. The right of an assignee to maintain such a suit in a court of equity in his own right, whatever may be the nature of his derivative title, through a will and administration, or by a mere grant, does not seem susceptible of any legal doubt.

The next ground of demurrer is the want of proper parties to the bill. The objection is, that the executors of Trecothick and Tomlinson are not before the court, nor the trustees under Trecothick's will; and that they are necessary parties to the bill. In a recent case, this court had occasion to go somewhat at large into the doctrine of parties. I allude to the case of West v. Randall [Case No. 17,424]; the principles of which decision have, in no small measure, been confirmed by the supreme court in Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 167. I shall content myself with a simple reference to these cases, as containing the true grounds, upon which courts of equity act on the subject of parties. See, also, Quintine v. Yard, 1 Eq. Cas. Abr. 74; Walley v. Walley, 1 Vern. 487; Fell v. Brown, 2 Brown, Ch. 278.

Let us consider the case, in the first place, so far as the objection applies to the title derived under Trecothick's will. By that will, four persons, who were also his executors, were constituted trustees of all his real and personal estate. The real estate was devised to them in fee in trust for the children of Trecothick in fee tail, if he left any (and in fact he left none), and in default thereof, in trust for the plaintiff in fee tail. The personal estate was bequeathed to them, after payment of debts and legacies, to be invested in real estates in England upon the same trusts. The bill alleges, that all the debts and legacies have been paid, except an annuity to Mrs. Hannah Ivers (the mother of the plaintiff), which her husband, James Ivers, was authorized to pay out of the funds collected by him under his agency, and the payment of which was made one of the conditions in the agreement between him and the plaintiff, by which he retained those funds during his life. The bill further states, that all the executors and trustees are now dead, the Rev. Earl Apthorp having been the last surviving executor and trustee. The question here does not respect the real estate under the will, but that portion only which was personal, or ultimately turned into personalty, by the sales and collections in America. The bill does not state, that there is no executor or heir of the Rev. Mr. Apthorp now in existence, nor that, if there is, he resides out of the jurisdiction, nor that he refuses to take administration, or to become a party to the bill, which certainly were very proper averments to have found their way into the bill, so far as the facts would warrant them. Now, in respect to the executors of Trecothick, as executors, I do not know that they are necessary parties to the bill. They can be so only, so far as funds might be wanting on their part to pay debts or legacies. But, supposing these all paid and extinguished, and the very lapse of time might create a presumption of this, even if the bill did not, as it does in fact, assert a payment and extinguishment of them, they do not seem to have any interest in the controversy; at least not such, as that the court might not get over the difficulty of want of parties, if they were without the jurisdiction, and refused to authorize or seek an administration here. But it is the less important to deal with this point, because being at the same time trustees under the will, they must be deemed by operation of law to take all the personal estate in their character of trustees, as soon as the debts and legacies were paid. The Rev. Mr. Apthorp then became, as surviving trustee, the sole possessor and owner of all the funds collected under the agency in America. In the hands of his agent, the funds are to be considered the same as in his own hands. If any person then is to be a party, it is the executor of the Rev. Mr. Apthorp. He is to be a party, as succeeding to the trust, and compellable to apply the funds to the original purposes of Trecothick's will.

This brings the court to a very material consideration, and that is, how far the plaintiff, as cestui que trust, has a right to control the application of the trust funds to the purposes of the will. Has he a right to a decree for the payment of the funds to himself? Has he a right to prevent them from being invested in real estate upon the trusts in the will? The general principle in chancery is, that where money is directed by articles or by will, to be laid out in land, the party, who would have the sole interest in the land, if purchased, may elect to have the money paid to him, and that it shall not be laid out in land. That doctrine was recognized in Benson v. Benson, 1 P. Wms. 130, and Short v. Wood, Id. 471. See, also, 2 Atk. 452; 1 Atk. 12; Saund. Uses, c. 3, § 7, art. 14; Chaplin v. Horner, 1 P. Wms. 485; Craig v. Leslie, 3 Wheat. [16 U. S.] 363, 578. But there is this distinction, that, if he is tenant in fee simple of the land, when purchased, he has a right to the money absolutely; but if he is tenant in fee tail, with remainders or reversion over, then the court will not interfere, and give him the money, because, though tenant in tail may bar the remainders, by a common recovery, yet, as a recovery can only be in term, the court will not deprive the re-

mainder men of their chance, that the tenant in tail may die in the vacation. But if the tenant in tail is also entitled to the ultimate remainder in fee, then, as he can levy a fine in vacation, as well as in term, and thereby bar the intermediate remainders, the court will give him the same benefit as if he were absolute owner. Benson v. Benson, 1 P. Wms. 130. See cases collected in note to Collet v. Collet, 1 Atk. 12, note 1; Seeley v. Jago, 1 P. Wms. 389. That point was first decided by Lord Cowper in Colwall v. Shadwell, cited 1 P. Wms. 471, 485, and has ever since been recognized as good law. It was acted upon in Short v. Wood, Id. 471, and fully adopted in Collet v. Collet, 1 Atk. 11. In this last case, the brothers and sisters of the plaintiff were entitled to remainders; but, they appearing in court, and consenting to the payment of the money to the plaintiff, the court, upon this consent, decreed it to be paid over to him. In the present case there is a resulting trust of the remainder, undisposed of by the will after the estate tail in the plaintiff, to the right heirs of the testator. The plaintiff is not, therefore, absolute owner, and entitled at all events to the money. Who the heirs of the testator are, entitled to such remainder, is not stated in the bill, and no inference, therefore, can be drawn by the court on this subject. In this posture of the cause, where no consent is given by the heirs entitled to the remainders, it is difficult for the court to say, that the rights of the surviving trustee to the money to fulfil the objects of the will, can be intercepted, at least without making him or his executors a party. If the bill had asserted, that he had absolutely assigned the funds to the plaintiff, or assented to their being paid over to him by the agent, and the agent had acted upon such agreement, and recognised, in an unequivocal manner, his title to them, that might vary the case. There is, indeed, an act of parliament (40 Geo. III., c. 36), by which the court of chancery is authorized to order money in trust to be laid out in land, to be paid to the person who, as tenant in tail of the land, could bar the remainders by a recovery. Lowton v. Lowton, 5 Ves. 12, note; Ex parte Bennet, 6 Ves. 116; Ex parte Sterne, Id. 156; Ex parte Hodges, Id. 576. That might possibly relieve the case from some difficulty, if it were placed, with other accompaniments in the bill; and if it were shown, that, according to the course of chancery, acting upon that act, the plaintiff would now be entitled, if the money were in England, to receive it; or, at all events, if it were shown, that there were no opposing interests in the trustee, and there were no means of bringing him before the court, or he had, by long acquiescence and agreement, admitted the plaintiff's right. For all these purposes the bill is far too equivocal and loose and general.

One circumstance, however, of considerable significance as to this point, is the allegation in the bill of an agreement between Ivers and the plaintiff, that Ivers should hold the funds in his hands during his life, and have the interest thereon, paying the annuity to the plaintiff's mother. But it is not said, that this agreement was with the consent of the trustees, or acquiesced in by them. It is only stated, that Ivers did agree, that his executors should account to the plaintiff for the principal after his, Ivers', decease. If this was with the assent of the trustees, it would present one aspect of the case strongly in favor of the plaintiff, though Moor v. Blagrove, 1 Ch. Cas. 277, looks the other way. See Russell v. Clarke's Ex'rs, 7 Cranch [11 U. S.] 69, 98. If without their consent, it would give rise to a question, how far the court would dispense with parties, where the plaintiff sought to claim the funds, if not in violation of the trust, at least without giving the trustees an opportunity of being heard. I advert to these considerations in order to show, that the texture of the bill is not exactly such as enables the court to see its way to any final and definitive result. The difficulties may not be such as to call upon the court to dismiss the bill; but they show, that some amendments are necessary. But the demurrer goes, not merely to the claim under Trecothick's will, but to the equity of the plaintiff, as assignee of the Tomlinsons. The sufficiency of the assignment is admitted by the demurrer. The only question is, whether, upon such admission, the assignors, that is, the executor of Trecothick and the executor of the Tomlinsons, are necessary parties. If they were without the jurisdiction, and it were so averred in the bill, I should upon the demurrer have great difficulties in deciding, that they were necessary parties. The rule in equity seems to be, that executors and administrators ought, in general, to be parties to suits affecting the estates of the deceased; but this rule may be dispensed with when there is no administration, or the party is without the jurisdiction. Cooper, Eq. Pl. 35; 2 Atk. 51, 510; 1 Vern. 95; Finch, Prec. 83; Milligan v. Milledge, 3 Cranch [7 U. S.] 220.

In respect to cases of assignments, it has been argued at the bar that the assignor is always a necessary party, and the cause cannot go on in the name of the assignee without him. For this purpose the case of Ray v. Fenwick, 3 Brown, Ch. 25, has been relied on. That was the case of an assignment of a bond by an obligee, since deceased, and nobody had administered to him. An application was made for a ne exeat against the obligor, at the suit of the assignee. The lord chancellor (Thurlow) refused it, "because the suit, without a representative of the original obligee of the note (bond), must be dismissed for want of parties." This is the whole of the report; and it is certainly very unsatisfac-

tory, containing no circumstances, which enable us to see, whether the assignment was absolute or conditional only. In Cathcart v. Lewis, 1 Ves., Jr., 463, the same doctrine was, by the same chancellor, applied to the case of an assigned judgment, though his opinion principally proceeded on another ground. Here also, there are no circumstances stated in the report, enabling us to ascertain the nature of the assignment. The case of Cooke v. Cooke, 2 Vern. 36, is to the same effect. But it is a very short and loose note. Respectable as these dicta are, they do not appear to me well founded in point of law, unless in cases where the assignor has some remaining interest. If his assignment be absolute and unconditional, he can have no such interest. It is a general rule, subject, however, to some exceptions, that no person need be made a party, who has no interest, and against whom, if the cause be brought to a hearing, there can be no decree. Fenton v. Hughes, 7 Ves. 287; Whitworth v. Davis, 1 Ves. & B. 545. A mere witness cannot be made a party. Now, in cases of absolute assignments, the assignor has no interest; no decree could be had against him at the hearing; and he certainly may be made a witness. Upon what ground then does the objection stand as to such person? But there are cases of assignments, in which a doctrine contrary to that of Lord Thurlow is maintained, and upon principles rational and convenient. In Kirk v. Clark, Finch, Prec. 275, it was admitted, that, though cestui que trust must always be a party; yet the trustee was not to be so, if he have no interest, especially, if cestui que trust would undertake that he should conform to the decree. In Brace v. Harrington, 2 Atk. 235, Lord Hardwicke said: "It is not necessary, in every case of assignments, where all the equitable interest is assigned over, to make a person, who has the legal interest, a party; but if an obligee has assigned over a bond, and a presumption of its being satisfied arises from the great length of time, &c. the cause must stand over to make the representative of the obligee a party, because it is possible the obligee himself may have been paid; and therefore necessary to have an answer, as to that particular, either from him or his representative." The exception, here suggested, must, if good at all, stand upon the ground, either, that there was a payment to the obligee before the assignment, and then it would be a fraud upon all parties; or afterwards, and then the obligee, as the party ultimately liable, ought to be brought before the court. However this may be, Lord Hardwicke lays down a general rule, inconsistent with that of Lord Thurlow. In Hill v. Adams, 2 Atk. 39, Lord Hardwicke acted upon his own doctrine, holding, that "where a mortgagee assigns, without the mortgagor's joining (in the deed of assignment), the heir of the mortgagor, in preferring a bill to redeem, has no occasion to bring the original mortgagee before the court, for the assignee, as standing in his place, will be decreed to convey." In Chambers v. Goldwin, 9 Ves. 254, 268, Lord Eldon recognised the same doctrine. The converse case was decided by Mr. Chancellor Kent in Whitney v. McKinney, 7 Johns. Ch. 144, that, upon a bill to foreclose a mortgage, the assignee of the mortgage may maintain the bill without making the mortgagee a party. On that occasion the learned judge took a survey of the authorities, and put the point, whether the assignor ought to be a party or not, upon its true ground, whether the assignment was absolute or not. The reasonings of the master of the rolls in Whitworth v. Davis, 1 Ves. & B. 545, goes on the same general ground. And in Davies v. Dodd, 4 Price, 176, in the exchequer, in a suit by an indorsee against the acceptor of a lost note, it was held, that the drawer was not a necessary party.

The true principles to be adduced from the cases seem to me to be, that the assignor need not be a party, where the assignment is absolute, and he has no interest, and is not, by the nature of the case, brought under any new liability. If this be true generally, a fortiori, the assignor, even if a proper party, might be dispensed with when out of the jurisdiction of the court. In the present case the executors of the Tomlinsons have not the legal property in them, for Trecothick was the surviving partner, and entitled at law to collect the effects and account to the executors of the Tomlinsons. The latter, therefore, had an equitable interest only in the property, and a legal right to an account. But, as the bill asserts, that the assignment was made with the consent of the trustees and executors of Trecothick, which, upon the demurrer, must be taken to be true, that consent appears to me at present sufficient to dispense with the necessity of making either the one or the other parties. The case of Moor v. Blagrave, 1 Ch. Cas. 277, does not satisfy my judgment, that a contrary doctrine is sound, if that case cannot be distinguished from the present.

Many other topics have been brought into discussion upon the assignment, with which it is not now necessary to meddle; and sufficient unto the day is the evil thereof.

My opinion upon the whole is, that the demurrers are too broad, and not well taken in their matter and extent, therefore they must be overruled. The bill also appears to me very defective in its structure and averments; and before it can be brought to a successful hearing, it ought to undergo many amendments, even if the merits were altogether in its favour, upon which at pres-

ent I have not the slightest opinion. It is proper to add, that every thing relied on by way of demurrer may, so far as it goes to bar the suit, be brought out as matter of defence upon the answer, and insisted upon therein with all its legal effects. Demurrer overruled.

NOTE. After the above decree, no further proceedings were had on the plaintiff's bill, and at a subsequent term it was discontinued by consent.