MAURY's adm'r *vs.* MASON's adm'r.

1. It is a well settled rule of chancery, not to decree on a case supported by proof, and not sustained by the allegations of the pleadings. The allegation and proof must correspond.

2. There is a broad and clearly defined distinction between trusts of property, which are specific in their nature, and trusts of money, which have no earmarks by which they can be identified.

3. But there is no difference between a trust created by the deposit of money in the first instance, and one where the money is raised by the sale or conversion of a chattel deposited with a trustee, to convert into money.

4. Whenever the subject matter of a trust can be sued for at law, the statute of limitations may be insisted on as a bar, although the remedy is pursued in a court of equity.

5. The only trusts not within the operation of the statute, are those which are peculiarly and exclusively, the subjects of equity jurisdiction.

6. A subsisting recognised and acknowledged trust, as between the trustee and the *cestui que trust*, is not barred by the statute of limitation.

7. If specific property is placed in the possession of any one, in trust for a specific purpose, as long as it remains in specie, and capable of identification, it is considered as held subject to the trust, until such time as the trustee shall do some act evincing his intention to convert it to his own use, or to renounce or abandon the trust confided to him; and in all such cases, between the trustee and *cestui que trust*, such intention must be known or communicated to the trustee, otherwise, the property will be considered as remaining subject to the trust.

8. But this rule has never been applied to mere money trusts, when the fund has not been kept distinct and separate from other funds belonging to the trustee.

9. The fact, that action can be maintained for money received on one of numerous demands, does not revive all previous causes of action, and the payment of one claim cannot be construe I as an admission of another.

10. If, at the time of a testator's death, there is any specific personal property, in his hands belonging to others, which he holds in trust, or otherwise, *and it can be clearly traced and distinguished from the testator's own,* such property, is not assets to be applied to the payment of his debts, or to be distributed among his heirs, but it is to be held as the testator himself held it.

11. But if the testator has *money, or other property,* in his hands belonging to others, which is in trust or otherwise, and it has no ear marks, and is not distinguishable from the mass of his own property, the party must come in as a general creditor.

12. And the rule above stated, as governing cases where the trustee is dead, extends with all its force, to money trusts where the testator is living.

13. As long as the trustee holds it capable of being distinguished as a separate fund distinct from his own money, the trust will be presumed to exist, from the circumstance that it is thus kept distinct, for this could alone be the case where the trust was recognised and admitted.

14. But if the trustee receives money on account of the subject matter of the trust, and does not separate it and keep it so that it can be identified, a continual conversion is constantly taking place, and if the *cestui que trust* lies by for more than six years, or such other time as will create a statutory bar, the presumption of payment will arise as in any other case of a mere money demand, and the *onus* is thrown on the party, claiming the money, to repel the presumption as in other cases.

15. It is now well settled, that if a defendant, by plea or answer, relies on the statute of limitations, as a defence—the plaintiff, if he wishes to bring his case within any of its exceptions, must amend his bill or file a special replication, so that the new matter introduced by him may be controverted or avoided by the opposing party.

16. And the act of eighteen hundred and twenty-three, dispenses

Maury's adm'r *vs.* Mason's adm'r.

only with the merely formal replication, before necessary, and does not authorise the introduction of evidence, not applicable. to any previously made allegation.

17. The same strictness in an answer to a bill in equity, where the statute of limitations is relied on as a defence, is not requisite, as in a plea.

18. Cases of bailment and unwritten contracts, when the contract is *expressed*, and the duties defined, are not open contracts in the view of the statute of limitations, and therefore, actions founded on them are not barred in three years.

19. Where a defendant in equity wishes to bring the case charged in complainant's bill, by evidence, to be one of open account, he must make the necessary allegations of facts, by his plea and answer.

20. The mere statement of an account before auditors, for the purpose of facilitating the examination of matters before them, is not a revival of a demand barred by statute.

21. Nor is the correction of an improper judgment, or a payment made on it at the instance of a representative, an admission of other demands, as claims existing, due and unpaid, by a defendant.

22. The interest of one of several co-distributees is several, and does not, at his death, pass to his co-distributees. A distributee may, in his turn, become the foundation of a new stock, who may be persons other than those entitled with him to distribution.

23. A transfer of the interest of one of several distributees, parties to a particular suit, does not remove his disqualification, when offered as a witness in the cause.

24. And a bill will not be dismissed, without prejudice, to enable such a witness, in a future suit, to tender a suitable release to restore his competency.

Error to the Circuit court of Lawrence county, exercising chancery jurisdiction.

Maury's adm'r *vs. Mason's* adm'r.

Bill for discovery and relief, tried by *Coleman*, J.

The bill was filed by the sheriff of Lawrence county, who, *ex virtute officii*, had been appointed administrator of the estate of Maury. The intestate had placed in the hands of Mason, in October, eighteen hundred and twenty-one, a large number of notes, bonds and accounts, amounting to more than nine thousand dollars,—who undertook and promised to collect them. Collections were made in specie, or in par or premium bank notes, or in depreciated currency, at the usual rates of discount, varying from twenty to thirty per cent. Mason made some payments on them to Maury, some of them in depreciated paper, the discount on which was a loss to Maury and a gain to Mason; but a large sum, (say three thousand dollars,) remained in his hands unaccounted for. The bill prayed for a discovery and account.

The answer admitted, that defendant's intestate had received the notes, bonds and accounts to collect. The notes, &c. were payable to one Daniel W. Maury, who was a son of complainant's intestate, and who had formerly kept a store in Lawrence county, where he received the notes, &c. and had transferred them to his father, who deposited them with Mason for collection. Mason undertook the collection, more to save an old friend from injury, than from any motive of interest; and the answer alleged that he had fully paid over the amount he collected—some of the demands not having been collected. As Maury and Mason were intimate friends in their life time, defendant had no doubt they had fully settled with each other, and as the whole claim made by the bill was a stale demand, and in the

opinion of defendant, without equity—defendant insisted it was wholly barred by the statute limiting the time in which suits should be instituted, and insisted upon the statute by way of plea. The answer was accompanied with an exhibit of such receipts and memoranda, as defendant was able to collect from the papers which had come to his hands.

The case was committed to certain auditors appointed by the court, to examine and report upon the state of the accounts. Daniel W. Maury, a distributee of the estate of Maury, executed a release of his interest, and was a principal witness in the case. The report found a balance due complainant, of eight hundred and eighty-seven dollars and two cents.

Upon the hearing of the case, it seemed to the chancellor that the statute of limitations applying to the case was that of three years, and as there was no circumstance to operate against its being a bar, the opinion of the court was, that the plea of the statute should be sustained. The bill was therefore dismissed.

Assignments of error :

1. The chancellor erred in dismissing the bill and decreeing against the complainant, and for the defendant.

2. The chancellor erred in sustaining the plea of the statute of limitations.

3. The chancellor erred in not rendering a decree in favor of the complainant, for the balance of the account allowed him by the report of the auditors; and also the exchange and interest thereon, which he claimed.

*Hopkins*, for the plaintiffs in error.

GOLDTHWAITE, J.—The decree of the Circuit court, dismissing the bill, is predicated on the supposition, that the statute of limitations presents a complete defence, and the plaintiff in error has assumed several positions to convince us that this decree cannot be supported. These positions will be severally noticed.

1. It is said the notes and other evidences of debt, deposited with Mason (the defendant's intestate,) for collection, were *assigned* to him, to enable him to collect the monies due thereon, and thus a direct trust' was created, which it is contended cannot be barred by the statute of limitations. It may be remarked, in answer to this, that nothing is said in the bill of any assignment whatever, nor is the assertion supported by any evidence in the cause, unless the circumstance of Mason's prosecuting a suit in his own name on one, or perhaps more than one of the notes deposited with him, is to be taken as proof of an assignment. Whatever may be the effect of the proof in showing this fact, it is the well settled rule of chancery, not to decree in a case supported by proof, and not sustained by the allegations of the pleadings. The allegation and proof must correspond—(Clink vs. Tatom, 11 Vesey, 240; Smith vs. Clark, 12 Vesey, 277; James vs. McKernon, 6 John. 543; Beach vs. the Fulton Bank, 3 Wend. 573; Pratt vs. Northam, 5 Mason, 113; Barn vs. Chiles, 10 Peters, 177; Morrison vs. Hart, 2 Bibb, 4; Lemaster vs. Burckhart, 2 Bibb, 25; Langon vs. Henderson, 1 Bland. 236; Inston vs. Child, 1 Bro. C. C. 94; Bogman vs. D'Vaughan, 3 Stew. 243.)

But if the notes and other evidences of debt had been assigned to Mason, and this fact was alleged in the bill,

Maury's adm'r *vs.* Mason's adm'r.

this circumstance would not have the effect to change the character of the trust fund, when the money was collected. There is a broad and clearly defined distinction between trusts of property, which are specific in their nature, and trusts of money, which has no marks by which it can be identified. This distinction will be hereafter adverted to and explained; but there is no difference between a trust created by the deposit of money in the first instance, and one where the money is raised by the sale or conversion of a chattel deposited with the trustee to covert into money. To make a distinction in such a case, would savor more of refinement and ingenuity, than of practical utility, and its introduction as a rule of action, would unsettle some useful and well established principles.

We are not authorised to depart from the case which the complainant has thought proper to present by his bill, which alleges the deposit with Mason, of a large amount in value, of notes and other claims, which were to be collected by him for the benefit of the complainant's intestate. It alleges further, that the money due on their claims has been collected, and never accounted for or paid over. Here we find no allegation of a specific trust created, nor does the complainant seek to pursue a specific trust fund; it is the usual form of a bill for discovery of monies collected by an agent, seeking no other decree or relief, than for payment of whatever sum may be found to be due, and it might well be questioned whether such a bill is not alone cognizable in equity, on the matters of discovery and account.

Very soon after the enactment of the statute of limita-

8 P.

tions, we find the English Court of Chancery holding it to apply to cases in equity, although such cases are not within the words of the act, but notwithstanding its application *in general*, cases of trust were never held within its operation. In the earlier cases, the rule is laid down very broadly, that all trusts whatsoever were excluded; and the case of Locky vs. Locky, (Prec. in Chan. 518,) is the first case in which a distinction as to the several kinds of trusts was attempted. The cases decided previous to Locky vs. Locky, certainly contain the rule, as contended for by the counsel for the plaintiff in error. These cases are four in number, and are not satisfactorily reported, as they furnish nothing more than the facts of the case, and the decision of the court—(Harrison vs. Lucas, 1 Chan. Rep. 67; Heath vs. Henley, 1 Ch. Cases, 20; Shelden vs. Wildman, 1 Ch. Cases, 26; Lord Hollis' case, 2 Vent. 345.)

It must have very early recurred to the chancellors, that by the withdrawing of all trusts from the operation of the statute, there would remain very few subjects for its action, as every bailment, every transaction by an agent or factor, and indeed every case in which the smallest trust or confidence was reposed, might thus be withdrawn, by the plaintiff's seeking his relief in equity. The case of Locky vs. Locky, (Prec. in Chan. 518,) was, however, soon interposed, to arrest the growing evil of such a construction as had been previously given. Lord Macclesfield then decided : " when one receives the profits of an infant's estate, and six years after his coming of age, he brings a bill for an account, that the statute of limitations is a bar to such suit, as it would be to an ac-

tion of account at common law: for the receipt of the profits of an infant's estate is not such a trust, as being the creature of a court of equity, the statute shall be no bar to,—for he might have had his action of account against him at law, and therefore no necessity to come into this court for the account; but the reason why such bills are brought here, is from the nature of the dmand, that they might have the discovery of books, papers, and the party's oath, for the more easy taking of the account, which they cannot so well do at law; but if the infant lies by for six years after he comes of age, as he is barred of his action of account at law, so shall he be of his remedy in this court, and there is no sort of difference in reason between the cases."

This case draws the line with much precision and accuracy between those trusts which are, and those which are not barred by the statute. If it be *the mere creature of a court of equity*, the trust is not affected by the statute: all those for which there is *a concurrent remedy at law*, are within the statute, and it matters not in what forum relief is sought. This case has ever been considered the leading one to show the distinction between the cases within and without the statute, and subsequent decisions have established its authority. A review of the cases would be an unnecessary consumption of time, the more especially, as it has been done by Chancellor Kent in a most satisfactory manner, in a case which will be presently adverted to. A reference to the principal cases may, however, prove useful.—(Prince vs. Heylin, 1 Atk. 493; Brereton vs. Gamul, 2 Atk. 240; Sturt vs. Mellish, 2 Atk. 610; Pomfret vs. Windsor, 2 Vesey, sen. 472;

Smith vs. Clay, 3 Bro. Ch. R. 639; Harmood vs. Oglander, 6 Vesey, 199, 8 Vesey, 106; Stackhouse vs. Barnston, 10 Vesey, 453; Bond vs. Hopkins, 1 Sch. & Lef. 413; Hovenden vs. Lord Annesley, 2 Sch. & Lef. 607; Beckford vs. Wade, 17 Vesey, 87; Medlicot vs. O'Donnel, 1 Ball. & Bently, 156.)

In the case of Decouche vs. Savetier, (3 Johns. Chan. 216,) Chancellor Kent held that no time would bar a direct trust, as between the trustee and the *cestui que trust*, so long as the trust subsisted; and in the case of Coster vs. Murray, (5 John. Chan. 522,) he decided that the statute did not reach to matters of gratuitous bailment or trust. This latter case was affirmed by the Court of Errors, but on other grounds than those assumed by the chancellor. Murray vs. Coster, (20 John. 576,) Chief Justice Spencer, in his opinion, (which was that of a large majority of the court,) holds this language: "I have no hesitation in saying, that in a case where there is a concurrent jurisdiction in the courts of common law and of equity, the rule must be the same, and the statute may be pleaded with the same effect in the one court as in the other. In cases of trusts and frauds, peculiarly, appropriately, and *exclusively* the subject of equity jurisdiction, according to the established doctrine, the statute cannot be pleaded."

The same question again came before Chancellor Kent in the case of Kane vs. Bloodgood, (7 John. Chan. 90,) and he then adverted to the cases decided by him previously, and admitted he was misled by the earlier English cases: he examines his former decisions, and conforms to the rule laid down by Chief Justice Spencer, in

the case of Murray vs. Coster, which rule he strongly fortifies by a most able examination of most of the cases then reported.

In Trecothick vs. Austin, (4 Mason, 16,) Judge Story quotes the case of Murray vs. Coster with unqualified approbation, and the same rule has been recognised in most of the States—(Lingum vs. Henderson, 1 Bland, 236; Kinney's ex'ors vs. McClure, 1 Rand. 284; Benzien vs. Lenoir, 1 Car. Law Rep. 508; Hamilton vs. Shepperd, 3 Murphey, 115; Van Rhyn vs. Vincent, 1 McCord Chan. R. 310; Brackenbridge vs. Churchill, 3 J. J. Marshall, 11; Heirs of Shelby vs. Shelby, Cooke, 179; Cook vs. McGinnis, 1 Martin & Yerger, 361; Hooper vs. Bryant, 3 Yerger, 1; Armstrong vs. Campbell, 3 Yerger, 211; Terrell vs. Murray, 4 Yerger, 104.)

The two cases of Godfrey vs. Saunders, (3 Wilson, 94,) and Stiles vs. Donaldson, (2 Dallas, 264,) which have been cited by the counsel for the plaintiff in error, seem not to have been decided on the principle of a trust, but they turned exclusively on the question, whether the accounts claimed in the one case, and set off in the other, were within the exception of the statute which relates to accounts between merchant and merchant. Therefore, it is not material to examine the correctness of these decisions, as they turned on a point not involved in this case.

From the cases referred to, these principles may be decided—

1. Whenever the subject matter of a trust can be sued for at law, the statute of limitations may be insisted on as a bar, although the remedy is pursued in a court of equity.

2. The only trusts not within the operation of the statute, are those which are peculiarly and exclusively the subjects of equity jurisdiction. And

3. A subsisting recognised and acknowledged trust, as between the trustee and the *cestui que trust*, is not barred by the statute.

The case under consideration, is one for which the complainant could have sued at law, on the case made by his bill, and although the trust and confidence reposed, as well as the account required, may be sufficient to give jurisdiction to a court of equity, yet that jurisdiction is not exclusive. If the complainant sought a return of the evidence of such claims as remained uncollected, or the transfer and assignment of any securities taken by Mason in satisfaction of any of those claims, being of such a nature that they could be traced and identified, such a case would present matters exclusively cognizable in a court of equity.

2. It is insisted, however, that the proof in this case shows the transaction to have been a recognised and subsisting trust, as late as the latter part of the year eighteen hundred and twenty-six, because Mason then made the last collection. That his representatives so considered in eighteen hundred and thirty, when some money collected by reason of a judgment obtained by Mason, was paid over to the representative of the complainant's intestate, and that the trust must always be considered as subsisting until closed, renounced, or expressly abandoned.

If specific property is placed in the possession of any one, in trust for a specific purpose, so long as it remains

Maury's adm'r *vs.* Mason's adm'r.

in specie and capable of identification, it is considered as held subject to the trust, until such time as the trustee shall do some act evincing his intention to convert it to his own use, or to renounce or abandon the trust confided to him, and in all such cases between the trustee and *cestui que trust,* such intention must be known or communicated to the trustee, otherwise the property will be considered as remaining subject to the trust; but it is not understood that this rule has ever been applied to mere money trusts, when the fund has not been kept distinct and separate from other funds belonging to the trustee. It must be borne in mind, that the complainant is not seeking the payment or return of a specific fund separated from other funds of Mason, or which is capable of being traced; but the claim advanced differs in no essential particular from the ordinary claim for money had received to the use of the complainant or his intestate, and must be governed by the same principles which ought to govern such a case, unless peculiar circumstances shall be found to exist, which will authorise the application of other rules.

The general rule is forcibly illustrated by Judge Story, in the case of Trecothick vs. Austin, (4 Mason, 16,) where he observes, "executors are charged with no more in virtue of their office, than the administrator of the assets of their testator. If, at the time of his death, there is any specific personal property in his hands belonging to others, which he holds in trust or otherwise, *and it can be clearly traced and distinguished from the testator's own,* such property, whether it be goods, securities, stock or other things, is not assets to be applied to the payment

of his debts, or to be distributed among his heirs, but it
is to be held as the testator himself held it.    But if the
testator has *money, or other property*, in his hands belong-
ing to others, which is in trust or otherwise, and it has
no ear-marks, and is not distinguishable from the mass
of his own property, the party must come in as a general
creditor.    This is the settled law in relation to bank-
ruptcy, and in the administration of assets."    And again
he observes : " If the trust is still subsisting in the hands
of the executor, as executor, the lapse of five years does
not bar a remedy against him.    If it has become a mere
money transaction, *although originating in a trust*, then
it assumes the character of a debt, and the *cestui que trust*
is a creditor barred by the lapse of five years"—(See also
Kip vs. Bank of New York, 10 John. 63 ; Cooke vs. Mc-
Ginnis, 1 Martin & Yerger, 361; Hooper vs. Bryant, 3
Yerger, 1.)

These authorities show that the complainant could
have pursued the judgment obtained by Mason against
Smith, Ladd & Smith, as it was a security for one of the
claims deposited with him, and remained in the hands
of his personal representatives, either unchanged, or so
changed as to remain distinguishable from the remain-
der of his estate.    When the money was collected on
this judgment, it was not properly assets of Mason's es-
tate, but in equity belonged to whomsoever was, at the
time, the personal representative of the complainant's in-
testate.    As the payment could be enforced either at law
or in equity, the voluntary payment without suit can
produce no effect, as an acknowledgment of a subsisting
trust, which would not be produced by the recovery of

Maury's adm'r *vs.* Mason's adm'r.

a judgment. It is a mistake, to suppose that because an action can be maintained for the money received on one of many demands, that this circumstance will revive all previous causes of action. Payment of a part of a claim, distinct in its nature, is unquestionably an admission of the existence of the particular claim; but the payment of one claim cannot be construed as an admission of another; and it would be a most unreasonable assumption, to conclude, that an admission of the right of the complainant's intestate to the money collected by Mr. Ormond, in eighteen hundred and thirty, on the judgment, perfected, without the knowledge of Mason, or his representative, and at the instance of a representative of the complainant's intestate, should conclude a defence as to the other items of claims which have no connexion with the one admitted and paid, other than that of having been deposited for collection at the same time. The recognition of the trust, as subsisting, presumed from the collection of one of the claims by Mason, in eighteen hundred and twenty-six, is of the same nature with the one that has just been examined: it was a receipt of money to which the complainant's intestate was entitled, but the mere fact of its then coming into Mason's hands, affords no presumption whatever, of a recognition of the original trust. The rule which has been stated as governing those cases, where the trustee is dead, extends with all its force to money trusts, when the trustee is living. So long as the trustee holds it capable of being distinguished as a separate fund, distinct from his own proper money, the trust will be presumed to exist, from the circumstance that it is thus kept distinct, for this

8 P.                    29

could alone be the case where the trust was recognised and admitted. But when the trustee receives money on account of the subject matter of the trust, and does not separate and keep it so that it can be identified, a continual conversion is constantly taking place; and if the *cestui que trust*, lies by for more than six years, or such other time as will create a statutory bar, the presumption of payment will arise as in any other case of a mere money demand, and the *onus* is thrown on the party claiming the money, to repel the presumption as in other cases. The adoption of a different rule would, in effect, revive the authority of the earlier English cases on the subject of trusts, of every description, being without the statute of limitations, as every trust must at one period have subsisted and been acknowledged; and in few or none of these cases is there ever an express renunciation or disavowal.

The cases cited, (Leman vs. Pendleton, 3 Call, 538, and Johnston vs. Humphreys, 14 S. & R. 394,) do not appear to have any application to this distinction between trusts of property and trusts of money, and therefore need not be examined, as they have no bearing on the view which we take of this case. It may, however, be remarked, that the case from Sergeant & Rawle, presented a distinct acknowledgment of the identical trust sought to be enforced within the period of the statutory bar.

3. It is insisted that the proceedings had in a former suit against a previous personal representative of Mason, must withdraw this case from the operation of the statute, as the abatement of that suit was a consequence of

Maury's adm'r *vs*. Mason's adm'r.

the death of the party defendant, and as that suit could not be revived against the present defendant.

This question is certainly one of much difficulty, and might, under other circumstances, preclude the defence of the statute; but it cannot be examined, because it is not presented according to the established rules of chancery practice. It is now well settled, that if the defendant, by plea or answer, relies on the statute of limitations as a defence, the plaintiff, if he wishes to bring his case within any of its exceptions, must amend his bill, or file a special replication, so that the new matter introduced by him may be controverted or avoided by the opposing party—(Miller vs. McIntyre, 6 Peters' R. 61; James vs. McKernon, 6 Johns. R. 543; Mitford on Plead. 18; Lewis vs. Bacon, 3 H. & M. 89; Starns vs. Starns, 1 Edwards R. 358.) Special replications have gone entirely out of use; and as they tend to introduce a most inconvenient and unnecessary prolixity in pleading, are not permitted to be filed without the leave of the court—(Starns vs. Starns, 1 Edwards' R. 358.) The fifth section of the act of eighteen hundred and twenty-three, (Aik. Dig. 288, s. 17,) which directs that a special replication shall not be required, dispenses with the merely formal replication, which before was necessary to place the answer at issue. It does not authorise the introduction of evidence not applicable to any previously made allegation. To give it the construction to authorise proof of facts not alleged, could only produce surprise in most cases, and uncertainty and confusion in all.

4. It is objected, that the answer is not sufficiently precise in its terms, to raise the defence of the statute of

limitations, because the term of time which creates the bar is not shewn.

The answer is not precise or formal, and if any doubt can arise as to what statute is intended, the complainant is entitled to all the benefit he can derive from this want of precision. The words used by the answer are as follows: "The whole claim being a stale demand, and as the defendant believes, without the shadow of equity, he insists that it is wholly barred by the statute limiting the time in which suits shall be instituted, *and insists on it by way of plea.*"

No precedents giving the form of the *answer*, when this defence is insisted on in that manner, have fallen under our view; but the cases are numerous to shew that the same strictness is not requisite as in a plea—(Price vs. Price, 1 Vernon, 185; Anon. 3 Atk. 70; Hilyard vs. Cressy, 3 Atk. 303; Jones vs. Pengree, 6 Vesey, 580; Bailey vs. Adams, 6 Vesey, 586.) In most of these cases, *pleas* of the statute of limitations were overruled as insufficient, and were ordered to stand as *answers*, with leave to the complainant to except. These authorities are persuasive, at least, to show that no great strictness has ever prevailed as to the *form* of the answer, if the *defence* is sufficiently presented by it. There are, however, a class of cases in equity, as well as at law, which hold that a *plea* of the statute must be such as is properly applicable to the case—(Anon. 3 Atk. 70; Gould vs. Johnson, 2 Salk. 422; Blackman vs. Tidderly, 2 Lord Raymond, 1099.) In Hudson vs. Hudson, (6 Munf. 352,) it is said by the court to be important "that the *term* prescribed by the statute should be *particularly* (though

Maury's adm'r *vs.* Mason's adm'r.

not *formally*) pleaded, or relied on, to let in the plaintiff to shew by his replication, that within the time an original had been sued out, if the fact was so." The force of this reason is not perceived, unless two or more statutes could be applicable to the same state of facts. If the statutory bar is always the same on a given state of facts, no reason is perceived why the defendant ought to be required to specify the term given by law in his answer, as it is as well known to the plaintiff as to him. But if the plaintiff is permitted to state his cause of action in such general terms, as to cover, alike, matters which are barred by the statute of three and six years, then a reason would arise why the defendant should, by his answer or plea, set out the circumstances from which he is authorised to claim the bar of the shorter period, or that a general answer or plea should be referred to the longest period—a construction which could be productive of no evil consequences to the plaintiff in any case. Further to illustrate our views, a reference may be had to the forms of declaring in assumpsit on the common counts. Under those common counts, or under many of them, a promissory note would be receivable in evidence, and so would the items of an open account, properly so called. It would seem from this fact, that a plea of the statute of limitations of three years would not be a good plea to such a declaration, unless it contained the averment, that the cause of action arose from an open account. In Kentucky, where a statute similar to our own, is in force, this is the form used in pleas of this character—(Dyott vs. Letcher, 6 J. J. Marshall, 541.)

We will not undertake to determine, at this time, what

is an open account within the meaning of our statute. Perhaps it will at all times be found easier to determine the cases which are not such, than to define with accuracy and precision all those accounts which may be classed as such. The bill alleges, that the complainant's intestate placed in the hands of the defendant's intestate, a large amount of money due on bonds, notes and accounts, which he afterwards collected. How this differs from any other species of bailment, in principle, it is difficult to perceive, and yet it has never been thought that such cases were within the statute of three years. It may be assumed, that in all cases where the contract is expressed, and the duties of each are defined at the time, that it is not an open account. A contract may be made for the sale of goods, or to build a house, or to perform any other duty, and although it may never be reduced to writing, it will not for that omission become an open account. There is certainly nothing in the statute from which we can arrive at the conclusion that all accounts must be considered as open, which are not stated or reduced to writing. A contract is certainly neither the one or the other, if all its terms are fixed and certain.

Another criterion by which we readily ascertain that this is not an open account, within the terms of the statute is, that it was not so when the deposit was made, and if not so then, it must have become so by the act of the defendant's intestate, in paying over the money at several times. This case is not conceived to differ materially from the case of an attorney to whom a note is confided for collection, with whom it can make no difference whether he pays a portion of the sum collected

to his principal at different times—according to the argument, by such partial payments, he would change the character of his liability, or rather by his own act, reduce the limit of time which will create a statutory bar from six to three years.

We therefore consider it as clear, from the allegations of the bill, that the statute of three years limitation is no bar; and that if the defendant could bring the complainant's case by evidence, to be one of open account, within the statute, it remained with him to do so by the necessary and proper allegations of facts by his plea or answer, and having omitted to do so, the answer insisting on the statute as a bar, must be referred to the case as stated in the bill, and no other than the six years statute being applicable, he will be allowed the benefit of that alone.

This conclusion renders it necessary to examine the case on the evidence adduced, to ascertain if the demand is barred by lapse of time, and if so, whether any admissions have been made which will withdraw the case from the operation of the statute. These matters are relied on to show a revival of the obligation on the part of the defendant's account with the complainant, which will be severally noticed.

1. It is insisted that the statement of an account before the auditors appointed to examine the accounts in this case, has this effect.

To support this proposition, we must intend what it is certain was never understood by the parties themselves. It would be most unreasonable to suppose that this admission ought to conclude the defendant, and not give it

the same effect against the plaintiff.    But the answer to this position is, that the admission was not made as a sum *due, or as a subsisting debt*.    It was an admission made for the purpose of facilitating the examination of the accounts, and to relieve the auditors from the trouble of investigating what the parties themselves had previously examined, and were willing to admit as established.

2. The correction which was made of an imperfect judgment, and the payment by Mr. Ormond, in eighteen hundred and thirty, of the amount collected thereon, is next insisted on.    This has already been considered under another head, and it may be here remarked, that this payment was never in any manner connected with the representatives of Mason, by any evidence whatever. The money was collected and paid over at the instance of a former representative of the complainant's intestate. If, however, the collection and payment had been made by the present representative of Mason, it could have produced no effect as an admission of the present claim as an existing demand, due and unpaid.

3. The only remaining part to be considered, is whether the case of the complainant is made out by the evidence of Maury, the witness examined, to prove an admission by Mason in his life-time, within six years previous to the institution of the suit.

This witness is admitted to be one of several co-distributers, and an objection to his competency to give evidence, was taken in the court below and overruled.    Before he was examined, he executed the following instrument of writing:  "I do hereby release to my mother,

Martha Maury, and my brothers, James P. Maury, William H. Maury and Robinson M. P. Maury, co-distributor's of my father's estate, all my right, title and interest, of every character whatsoever, in and to any sum or sums of money, or any thing else that may be recovered by the complainant in the above case." This is signed and sealed by the witness, and appended to his examination. The objection which exists to the admission of this witness, is his interest in the estate of his deceased father, whose administrator is the complainant in this suit.

It does not admit of a question, that this suit is for the benefit of the creditors and distributees of the deceased Maury, and it must be considered for the purpose of testing the interest of a distributee, as if the suit was instituted in the names of those entitled to the fund to be raised or increased by a successful prosecution of the same. The interest which each distributee has in the estate to be divided, is several in its character, and it does not at his death pass to his co-distributees, but he in his turn becomes the foundation of a new stock, who may be persons other than those entitled with him to distribution.

Distributees have not, therefore, a joint right; but the interests are perfectly distinct, each one from the other. This being the case, a release can have no other effect than a transfer of a separate and distinct right, and there can be no difference in law between the assignment of this right to a co-distributee, and an entire stranger. Such a transfer of his interest in the estate does not, in our opinion, remove his disqualification. The case of Bell vs. Smith,

8 P.          30

(5 Barn. & Cress, 198,) seems to us decisive of the point, when this view is taken. The material facts of that case are as follows: "It was an action of assumpsit, brought in thé name of Bell, on a policy of insurance. The declaration averred that *Armet*, Gibb, Robertson and Wimble, were, at the time of the loss, interested in the goods insured, to the full amount of the policy, and that it was made for their use and benefit. At the trial, *Armet* was offered as a witness by the plaintiff. He was objected to as incompetent, and the plaintiff gave in evidence a release to him of all actions, claims, &c., which he might have against him by reason of the policy of insurance, or for any monies to be recovered by him of the underwriters. An assignment of all the interest of Armet, Gibb, Robinson and Wimble, to Lachlan & Robertson, authorising them to receive the amount to be received on account of the policy, for their own use and benefit, and Armet was indemnified against the costs of the suit. The court admitted the witness, but on a writ of error, the Court of King's Bench determined that Armet was not a competent witness. Bailey, Justice, after stating that Armet was incompetent, because liable to the attorney for the costs of the suit, uses this language: "But I think Armet was incompetent on higher grounds. The action was brought at the instance of Armet, and three others: it was found they had not sufficient evidence to support it, and machinery was resorted to, calculated to introduce all the evils of champerty and maintainance.

First, Armet, without consideration, released all his interest to the nominal plaintiff in the suit, and then in

Maury's adm'r *vs*. Mason's adm'r.

consideration of ten shillings, all the parties joined in an assignment to Lachlan & Robinson. It is difficult to put a stronger instance of champerty and maintainance. These are unlawful, because they tend to encourage and keep alive law suits. Now, that was the very object of the assignments in question; for each of the assured may be considered to have admitted by the deed which he has executed, that without Armet's evidence, the action was not maintainable upon these grounds, I think he ought not to bear been admitted to give evidence."

The facts of this case bear a striking analogy to the one we are now considering. Armet and Maury occupy the same situation as to interest: both of them are the parties actually interested in the fund, and yet in each case, a nominal plaintiff is interposed. This case unquestionably goes the length of deciding, that an individual, placed by the law in the situation of Maury, cannot be a witness to increase the fund of which he is a distributee. It is not necessary for us to determine this question, as Maury has never in point of fact or law released his interest to any one—as the transfer can have no effect as a release, and as an assignment it is wholly void, for the reasons given in the case of Goodwin vs. Loyd, decided at this term.

Admitting it to be effectual as a release, however, there would yet remain in him an interest which is not attempted to be got rid of. The complainant, if successful in this suit, would hold the sum recovered as the assets of the estate of Maury, the intestate, and it would form a fund out of which the debts of the estate would be paid, thus releasing from a burthen, either the lands descended

(if there be any) to the witness, or relieving the remainder of the personal estate, (in which the witness has not released his interest) from the burthen of the debts due from the estate. Again, if judgment is rendered against the complainant for the costs of this suit, a fund is made chargeable then with it, of which the witness is entitled to distribution.

The case of the complainant, resting solely on the evidence of this witness, as he is shown to have been incompetent when examined, the bill was properly dismissed by the Circuit court, although for a wrong reason—and the judgment is affirmed.

It has been suggested, that in case of an affirmance, the decree should be so modified as to dismiss the bill without prejudice to any subsequent suit, as the witness, Maury, may wish to remove his disability, by profering such a release as will restore his competency. If the case presented a defect in, or an omission to prove a writing, this course would be allowable, as in the case of Wilkins and Hall vs. Wilkins, (4 Porter, 245,) and Gayle vs. Singleton; but in such a case as this, the modification of a decree for such a purpose cannot be allowed, as the consequences which it might produce would be of mischievous tendency.