### STEWART and IRVINE V. FRY'S ADM'RS.

1. When a mortgage of personal estate, which is removed to this, from another State, subsequently to the incumbrance, has lost its priority of lien, as to creditors whose debts are contracted here after the removal of the property, under the act of 1823—Aikin's Digest, 207, § 4—this matter can not be urged by the personal representatives of the mortgagor, as a defence to the mortgagee's bill for foreclosure and sale. The proper course, under this statute, where the creditor has obtained no specific lien by judgment and execution, is to file a bill against the personal representative of the mortgagor, joining the mortgagee, and asserting the right to satisfaction for his debt, by subjecting the mortgaged chattel to its payment.
2. The profits arising out of the use of a personal chattel, may be made the subject of a mortgage.
3. Where the mortgagee permits the mortgagor, *who is also the debtor*, to receive the mortgaged profits, the former is not entitled to have an account against the personal representatives of the latter, for sums received by him in his lifetime.
4. And the rule is the same, although there is a specific contract, to apply the profits to the extinguishment of the debt. In such a case, the profits, when received by the mortgagor, and carried into his general funds, can not, after his death, be reached by the mortgagees, as a trust. The trust fund is not capable of distinction, and it remains only as a general debt against the estate.
5. Such a contract, to apply the profits in extinguishment of the debt, is binding on the personal representative, and if profits are realized by him from the use of the chattel after the mortgagor's death, they are to be accounted for to the mortgagee, and are not to be considered as general assets of the estate.

Appeal from the Court of Chancery for the first Distrist of the Southern Division.

THE object of the bill, in this case, is to obtain satisfaction of sundry debts due from the defendants intestate, and secured by a mortgage of the steam-boat Jefferson, executed by him in Kentucky, in the year 1837. When the mortgage was executed, the intestate was a resident of Mobile, in this State, to which place he removed the steam-boat, and continued to run it until his death, which took place in 1839. The defendants qualified as his administrators, entered into the possession of the boat, and continued to run it until the exhibition of this bill.

The mortgage deed contains a stipulation, that all the clear profits of the boat, should be applied to the extinguishment of

the debts, in the order in which they are named in the mortgage.

The prayer of the bill is, that the defendants may state an account of the profits received by their intestate and themselves, from the use of the boat, and apply them to the payment of the debts; also, that the boat may be sold, and the proceeds applied to the same purpose.

The defendant, B. H. Fry, alone answers the bill; he admits the execution of the mortgage, requires proof of his intestate's indebtedness, and insists, as the mortgage was not registered in Alabama, until the year 1840, that therefore, the creditors of his intestate, whose debts were contracted here, after the removal of the boat, and previous to the registration of the mortgage, cannot be prejudiced by it, and that the administrators are entitled and bound to hold the boat as general assets of the estate, to be applied to the payment of all debts, free from the lien of the complainant.

The answer also asserts that the estate is greatly insolvent, and sets out a schedule of the creditors and the several amounts of their demands.

Evidence was taken, sustaining the allegations of the bill and answer, and the Chanellor at the hearing dismissed the bill with costs but without prejudice. The complainants appealed from this decree, and now insist that the Chancellor should have proceeded to decree an account for the profits and for the sale of the boat.

STEWART, for the plaintiffs in error.

DUNN, contra.

GOLDTHWAITE, J.—The principal question, and that most probably, which the Chancellor considered as decisive of this case, arises from the facts disclosed by the answer. This, after admitting the execution of the mortgage in the year 1837, asserts that the mortgagor then was a resident of Mobile, engaged in the business of steam-boating; that soon after the mortgage was executed, he conveyed the boat to that place, where the mortgage was registered, in the year 1840, and not previously; that the mortgagor contracted various debts on the credit given by the possession of this and other boats; that he died insolvent; that his estate has been so represented by

the defendants, and so declared by the proper authorities.— The answer insists from these facts, that the mortgage has lost its lien on the boat, as to those creditors whose debts were contracted by the intestate, after the boat was removed to this State, and previous to the registration of the mortgage; and that the defendants are entitled to hold the boat, with the profits derived from it, as assets of the estate.

The act of 1823, which is supposed to confer this right on the administrators, is in these terms: "All property mortgaged, or under any deed of trust, or other legal incumbrance, which may afterwards be removed to any county in this State, shall be liable to the payment of any debts, which the holder of such mortgaged property may contract, after his settlement in such county, unless the mortgage, deed of trust, or incumbrance, covering such property so removed as aforesaid, shall be duly recorded, in the clerk's office of the County Court of the county to which such property may be removed, within six months, unless the person bringing such incumbered property into any county in this State, shall have removed from another State, in which case, one year shall be allowed for the recording of any such mortgage, deed of trust, or other legal incumbrance, after such settlement as aforesaid: *Provided, however,* That after such record duly made, the provisions herein [contained] shall cease to take effect." Aikin's Digest, 207, § 4.

It is not our intention to enter upon any examination of this statute, because our opinion is, that the administrators of the intestate are incompetent parties to assert the rights of creditors against the mortgagees. The mortgagor, if living, would not be allowed thus to defeat his own incumbrance, and his personal representative stands in precisely the same relation to the mortgagees. An admission that this mortgage, from the omission to register it in the county of Mobile, has lost its lien as to those debts of the intestate, contracted after the removal of the boat to this State, would only show the necessity of confining the litigation on this subject, to those creditors and the mortgagees, who alone are interested in the question in dispute. We cannot perceive how any act or admission of the administrators can, in any manner, affect the rights of either of those parties in interest. The conclusive objection to any decree in

this suit which would confer rights on the creditors generally, or any particular class of them, is, that they are not before the Court as parties; nor, indeed, can they be brought before it except by their own act. We think it cannot be properly contended, that those mortgagees are bound to ascertain that there are creditors who may have an equal or a paramount right to themselves; nor ought it to be imposed on them to litigate questions with the administrators, when those interested in the decision cannot be bound by the decree, or compelled to pay costs, if it is adverse to their interests. But, independent of all these considerations, we cannot conceive how this estate can be satisfactorily settled in the County Court, if this boat, incumbered as it is, shall be considered as general assets belonging to the estate, from the single fact, that there may be creditors of the intestate, whose debts were contracted before the execution of this mortgage. Such creditors, certainly, would have no claim under the statute, and yet they would share *pro rata*, with the mortgagees, if the boat is to be held and distributed as general assets.

The only course which seems to be proper, under the statute, when the creditor has obtained no specific lien by judgment and execution, is, for him to file a bill against the administrator of the intestate, joining the mortgagees and asserting his right to satisfaction for his debt by subjecting the mortgaged chattel.

In the case of Boyd & Swepson v. Stainback, *et al.* 5 Mum. 305, this was held to be the course of proceeding by the creditors against one who had loaned slaves to the intestate, which loan, as to these creditors, was to be considered as an absolute gift, in consequence of the omission to record the reservation, pursuant to a statute of Virginia, similar to our own statute of frauds, and very similar, in principle, also, to the statute just recited.

Although this conclusion necessarily causes a reversal of the decree rendered by the Chancellor, yet, there remain some other questions with respect to the right claimed by the mortgagees to call for an account of the profits made from the use of the boat.

2. And first, as to those made and received in the life time of the intestate.

It has been suggested, that the profits to be derived from a personal chattel, cannot be made the subject of a mortgage, inasmuch as they are not in existence when the incumbrance is created; and, in a case like this, because the chattel itself was not delivered.

An argument based on this suggestion, would be specious, but, as it seems to us, notwithstanding, would be unsound, because it is certain, that rents, fairs, waifs, markets, ferries and the like, may be mortgaged. 1 Powel on Mort. 18. We are not aware that any just distinction can be drawn between a rent issuing out of real estate, and a profit arising from the use of a personal chattel, so far as concerns the capacity of each to be mortgaged. When the two conditions of debtor and mortgagor are separated and attached to different persons, it will be readily perceived that there is no good reason why the profits of a personal chattel may not be pledged as the security for the debt of another; and if for the debt of another, it must follow that it may be so pledged for the mortgagor's own debt.

We will not, for the present, involve this question with the difficulties which must arise in settling the priority of right, when the contest is between a creditor or subsequent purchaser, and the mortgagee, and the latter has permitted the mortgagor to retain the chattel in his possession; nor is it necessary that we should examine how far such a mortgage could be made available against the debtor himself, in a case where the profits would depend, necessarily, much more upon the skill and capacity of the person using the chattel, than upon any inherent quality in the chattel itself.

. We wish to be understood, for the present, as deciding only that the profits arising out of the use of a personal chattel, may be made the subject of a mortgage.

3. Although such profits may be made the subject of a mortgage, it is obvious, when the mortgagor is left in possession of the chattel, that he will receive them, in the first instance, and therefore, when the mortgagor is also the debtor, the creditor has no remedy, either at law or in equity, for the profits so received. And this peculiarity arises from the fact that the precedent debt is in existence; for which the creditor has his remedy at law. No matter what the amount of the profits may be, the creditor cannot recover more than his debt, and it would be

futile to recover less. The profits when thus received, constitute nothing but a debt. But, there is an aspect in which this case will be presently considered, when it will become important to ascertain the amount of profits received by the administrators since the death of the intestate; but as to those made and received by the intestate in his life time, we are not aware of any adjudicated case which authorises us to declare that the mortgagee may call for an account of such profits, *eo nomine,* either at law or in equity. There are several cases, however, in which the reverse is held as the settled rule. Higgins v. The York Buildings Company, 2 Atkyns, 107; Mead. v. Lord Owery, 3 Atkyns, 235.

In Coleman v. The Duke of St. Albans, 3 Vesey, jr. 25|; Lord Rosslyn, thus declares the rule: A mortgagee is not entitled to have an account against the mortgagor for the profits of the estate mortgaged, which have been received by the mortgagor, and applied to his own use; and the rule is the same where the mortgagor has actually given the mortgagee a power to receive. If the mortgagee omits to use that power, he must impute it to himself, if the profits are gone; it is against all rules of equity to decree an account against the mortgagor for the time when he has, by the connivance, or to speak more properly, by the permission of the mortgagee, received the profits and applied them to his own use.

At law, the mortgagee is not permitted to call on the tenant of the mortgagor, until a default in the mortgage and notice to the tenant. Moss v. Gallimore, Doug. 279; Birck v. White, 1. Term R. 384.

It is for these reasons, we conclude that, *as mere mortgagees,* the complainants are not entitled to an account for the profits received by the intestate in his life time.

4. But it is urged that the complainants are not merely mortgagees; that there is a specific contract to apply all the clear profits made by the boat to the payment of the debts secured by this mortgage.

Independent of the rule peculiarly applicable to mortgages, these profits, so far as received by the intestate, and carried into his general funds, cannot be reached by the mortgagees as a trust. In such a case, the trust fund is not capable of distinction, and it remains only as a general debt. This is the univer-

sal rule, both with respect to bankruptcies and intestacies.—. Trecothic v. Mason, 4 Mason, 16; Maury v. Mason, 8 Porter, 211.

5. Secondly, as to the profits received by the administrators since the death of the intestate. We have already shown the general rule which governs the receipt of rents and profits by the mortgagor, but we think a very obvious distinction exists in those cases where the mortgagor stipulates that he will apply the rents and profits to the extinguishment of the debt.—. We have also shown that a stipulation of this description is of no importance when the mortgagor is the debtor, *so long as he lives and is solvent,* inasmuch as the receipt of the profits would add nothing to the legal or moral obligation to discharge the debt; but, in our opinion, this becomes a very important consideration whenever the mortgagor is a different person from the debtor, or whenever the mortgagor is dead or has become bankrupt. In the first case, he becomes a debtor to the amount of the profits actually received, to the extent of the secured debt; and in the two latter cases, the mortgagee is entitled to preference over the general creditor, whenever the stipulated fund has been kept separate, and can be clearly distinguished from the general funds of the bankrupt or intestate.

The case of Coleman v. The Duke of St. Albans, before cited, unless critically considered, might lead to an impression that there is no room to make this exception to the general rule. In that case, duke George was the original debtor, and mortgaged the office of the Register of the Court of Chancery, which was vested in him and his heirs, for the lives of other persons; the mortgage contained a *personal covenant* to pay the debt. He died without payment, and the office descended to his son, who, with the consent of the mortgagee, surrendered it to the crown and took a new grant, after which, he (the son) mortgaged the office again to the same creditor, for the same debt, and authorised him to receive the profits from the deputy registers, but did not enter in *any covenant, either to pay the debt or to receive the profits of the office to the use of the mortgagee.* The last mortgagor also died, and his heir entered into the office and received its profits. A demurrer was sustained to a bill by the creditor seeking an account of the profits received by the heir of the last mortgagor, on the allega-

tion that the office itself would not produce a sum sufficient to discharge the debt.

It is evident, that in that case there was *no specific appropriation* of the profits of the mortgaged office for the payment of the debt due from the personal representatives of duke George. Independent of the mortgage, there was nothing more than a *mere power* to receive the profits which might be exercised or omitted by the mortgagee at pleasure, and until this power was exercised, or notice given of the intention to exercise it, the heir of the mortgagor was in no default, and incurred no liability by receiving the profits to his own use.

In the case we are called on now to determine, the mortgage contains an express stipulation, that although the profits shall be received by the mortgagor, yet, he will apply them to the discharge of the debts specified.

We think it does not admit of question, that this stipulation is binding on the personal representatives of the mortgagor, and that as long as the profits can be specifically traced, and which have not been carried into the general fund, they are to be accounted for to the mortgagee, and should not be considered as general assets of the estate.

It is certain that the profits received by the administrators, from the use of the boat since the death of the intestate, can be designated with accuracy, and that they have not been mingled with the general funds of the deceased, so as to be incapable of separation.

The remarks made by us in the commencement of this opinion, as applicable to the boat, in connexion with the statute, apply with equal force to this portion of the profits. If the boat itself is subjected to the payment of particular creditors, the profits follow as an incident. But we repeat that we cannot investigate those rights upon this bill.

We think the Chancellor ought not to have dismissed the bill, but should have proceeded to decree a foreclosure and an account for the profits received by the administrators since the death of the intestate, if the bill was in a condition to be heard upon the merits, which is a matter that has received no examination from counsel.

The decree is reversed, with costs, and the cause remanded for further proceedings.