Day, J.
The error alleged originated in the court of common pleas. The action in that court was on a promissory note. One of the defendants, who was surety on the note, interposed a defence, which raises the material question to be considered : will the mere neglect of the holder of a note to present it to the assignee of the principal, discharge the surety to the extent that might have been thereby realized on it out of the assets of the principal.
No case upon this precise point has been brought to our attention; we are, therefore, left to determine it upon the principles that run through the cases on analogous questions.
The case before us is not embarrassed by considerations that arise in cases where the principal debtor is discharged by the negligence of the creditor, for the statute of this *93 State in relation to assignments leaves the liability of the principal makers of the note unaffected by the neglect to present it for allowance and payment out of the assets in the hands of the assignees.
A creditor may, however, in many ways do that which, though it may not affect the liability of the principal, will exonerate sureties. In all such cases the discharge of the surety is based on some recognized and well-defined principle, and, in general, results from a positive act of the creditor which operates to the prejudice of the surety. Passiveness on the part of the creditor will not discharge the surety, unless he omits to do, when required by the surety, what the law or his duty enjoins him to do, or unless ho neglects, to the injury of the surety, to discharge his duty in any matter in which he occupies the position of a trustee for the surety. The Farmers' Bank of Canton v. Raynolds, 13 Ohio, 84; Schrœppell v. Shaw, 3 Comst. 446 ; 1 Story’s Eq. sec. 325; and note to Rees v. Barrington, 3 Leading Cases in Equity, 529, for a full reference to the authorities on the subject.
The discharge of the surety is not claimed in this case, by reason of any positive act of the creditor, nor by reason of his neglect to prosecute the claim, after being required by the surety to do so by notice in writing, in accordance with the statute, nor, indeed, by reason of - his neglect to comply with any requirement of the surety whatever, for, from aught that appears, the passiveness of the surety equaled that of the creditor. Nor did the creditor have anything in his hands, actually or constructively, in the nature of a trust. Then, upon the principles already so broadly stated, it would seem that the surety was not exonerated from liability on the note.
But it is claimed that it was the duty of the creditor tc present the note to the assignees, and thus save the surety harmless from the debt, and that his neglect to do so was, consequently, a fraud on the surely. This claim of fraud, it will be seen, rests on the supposition that it was a duty the creditor owed to the surety, to present the *94 note to the assignees in order to protect him from liability. What might have been his duty, if the surety had required him to present the note, we are not called upon to decide. But so long as the surety is willing to remain passive, why may not the creditor ? He may be entirely willing to continue to rest upon the credit he had originally given to the surety, rather than take upon himself the trouble and expense of claiming a dividend out of the assets of the principal ; for he may look to the surety as well as the principal for the payment of the debt. He gave credit to both equally, while the surety trusted the principal alone for his indemnity. So far as the interest of the creditor was concerned, it was a matter of indifference to him which of the makers of the note paid it; but it was directly for the interest of the surety that the note should be paid out of the assets of the principal. It would, therefore, seem most reasonable that he should be the primary party to move for the accomplishment of that object, for he who enjoys the benefit ought to sustain the burden. At least he might have requested the creditor to present the note to the assignees, and, if he refused to do so, I see no reason why he might not have done it himself, nor why, if the assignees had refused to allow it, he might not have enforced it by action, for the statute gives to the surety substantially every remedy that the creditor has, to enforce payment of a claim by the principal. The note became due within the time mentioned in the statute for the presentation of claims, and was overdue, more than two months before the assignees were authorized by law to make a dividend, and more than two years before their final settlement. The surety was not at any time debarred from any of his legal remedies against the principal, or his assets in the hands of the assignees ; and if, by possibility, they were not as ample as those of the creditor, he might at least have made them equally so, by discharging his own obligation to the creditor by payment of the note when it became due. At best, then, the surety was not less in default than the creditor, and, therefore, can claim no equitable right against him. Indeed, if the surety *95 had discharged his duty, by payment of the note when it became due, the creditor would have had no claim to present to the assignees of the principal; the surety’s own default to the creditor, therefore, in fact becomes the ground of his claim against him. Since, then, the breach of duty charged against the creditor cannot be sustained without giving the surety the advantage of his own default, I know of no principle on which his claim can be tolerated.
The case of McCullum v. Williams1 Exs. 9 Vt. 143, is much relied on by the plaintiff in error. In that case, the note was barred as against the estate of the principal, by reason of the creditor’s failure to present it to the administrator within the time limited by law, and the creditor sought to charge the estate in equity through its liability to the surety on the note. Relief was refused, in part, on the ground that good faith required the creditor to present his note to the administrator, and that, therefore, the negligence of the creditor, which discharged the principal, also discharged the surety. But that case is distinguishable from this, in that, here the principal was not discharged, nor does it appear, as it did in that case, that the surety was out of the country and had no notice of the decease of the principal.
But so far as the ruling in that case has any application to this, the weight of authority is against it. In Johnson v. The Planters' Bank, (4 Smedes & Marshall, 165,) it was held that the surety on a note was not discharged, although it was barred as against the estate of the principal, by reason of the omission of the holder of the note to present it to the administrator within thetime limited. In that case, after stating the general rule, “ that the obligation of the surety becomes extinct by the extinction of the obligation of the principal debtor,” the court say : “ An exception to this rule takes place whenever the extinction of the obligation of the principal arises from causes which originate in the law, and not in the voluntary act of the creditor, as in bankruptcy. Theo. on Prin. and surety, 67 ; Brown v. Carr, 7 Bing. 508. The creditor, in order to preserve his rights against the surety, is not bound to active diligence, and, if he merely *96 remains passive, his rights are not impaired.” (Theobold, p. 80.) * * * # “The creditor would not often give the credit without security ; he takes it for his own indemnity. The surety knows his own risk. If he desires to lesson that risk he may file a bill to compel the bringing of the suit, or, by payment, he may have an assignment of the instrument. But while both remain passive the operation of the law will not discharge the surety.” * * * # “The sureties may, in such cases, compel the presentment of the claim in due time, and thus preserve their recourse against the estate beyond doubt. If they fail to do so they are in fault in neglecting to protect their interest, and have no x'ight to throw the consequences of their ixegligenee xxpon the credit-ox’.”
To the same effect is the holding ixi Nashville Bank v. Campbell, 7 Yerger, 353 ; Hooks & Wright v. Branch Bank of Mobile, 3 Ala. 580; Vanderburgh v. Snyder, 6 Iowa, 39; and Silbey v. McAllaster, 8 N. H. 389.
In the last case cited, the chief justice, in delivering the opixiion of the court, said: “It is well settled, that a discharge of the principal, under a bankrupt law, does not discharge the surety. 6 Mass. 33 ; 4 M. & S. 334 ; 2 M. & S. 39 ; 4 J. B. Moore, 153.”
“ And a creditor is under xxo oblgation to prove his debt under a commission of bankruptcy of the px’incipal, unless the surety gives to the creditor an indemnity for the expense. 4 John. C. R. 132; 10 Vesey, 414 ; 6 Vesey, 734 ; 2 John. C. R. 562.”
“ The surety is the person who trusts the px’incipal, and it is his busixxess to see that the px’incipal pays. * * * Sxxch being the general rules of law, it is very apparent that if the px’incipal die, and his estate be administered in the insolvent course, the creditor is under no obligation to present his claim to the commissioners, and procure what he may from that estate. He has a right in such case to look to the surety for the whole amount.”
“ It is the business of the surety to procure the creditor to lay his claim before the commissioxxers, or to pay the *97 claim, and then lay his own claim before the commissioners for the money he may have paid to the creditor.”
If then the mere omission of the creditor to present his claim to the assignee of the principal in bankruptcy, or to his administrator, where in either case the liability of the principal is discharged, wil'1 not exonerate the surety, much less will such neglect exonerate him in a case like the one before us, where the principal remains liable.
The doctrine of the cases referred to, is in harmony with that before stated in relation to the liabilities of sureties, and, on principle, would seem to be decisive of this cáse.
In McLemore v. Powell, (12 Whea. 555,) Judge Story says : “It was correctly said by Lord Elden, in English v. Darley, (2 B. & P. 61,) that ' as long as the holder is passive all his remedies remain and, we may add, that he is not bound to active diligence.”
This doctrine, as applied to sureties, has been carried in this State to the extent of holding, that the loss of a judgment lien on the property of the principal, by reason of the omission of the creditor to enforce it, will not release the surety. (Farmers' Bank of Canton v. Raynolds, 13 Ohio, 84.)
We are not required to go to that extent, to hold that the mere omission of a holder of a note to present it to the assignee of the principal, will not exonerate the surety from liability thereon.
We are so well convinced that the rulings of the courts below were correct, that we are constrained to overrule the motion for leave to file a petition in error.
Scott, C. J., and Welch, White and McIlvaine, JJ., concurred.